**UNITED STATES of America,**

v.

**Edwin P. WILSON and Erik S. Wilson, Defendants.**

No. 83 Cr. 69.

United States District Court, S.D. New York.

June 3, 1983.

1418

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for U.S.; Eugene Neal Kaplan, Kenneth I. Schacter, Asst. U.S. Attys., New York City, of counsel.

Herald Price Fahringer, New York City, for defendant Edwin P. Wilson.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant, Edwin P. Wilson ("Wilson"), is named in all seventeen counts of an indictment and Erik S. Wilson, his son, is named in fifteen, all of which center about charges that while Wilson was in custody at the Metropolitan Correction Center ("MCC") New York, New York within this district he plotted, aided and abetted by his son, to cause the murder of witnesses and prospective witnesses in prosecutions against him in the United States District Courts for the Southern District of Texas, the Eastern District of Virginia and the District of Columbia, as well as the murder of two Assistant United States Attorneys who were in charge of the prosecution in the District of Columbia, and other persons. Wilson has since been convicted in the Districts of Texas and Virginia and is serving respective cumulative sentences of seventeen and fifteen years. He was acquitted of the charges against him in the District of Columbia.

The indictment charges that in and around November and December 1982 and early January 1983, during Wilson's detention at the MCC pending his upcoming trials and after sentence had been imposed in a concluded trial where he was found guilty, he met Wayne Trimmer ("Trimmer"), a fellow inmate at the MCC, there in custody under sentences imposed pursuant to New York state judgments of conviction for murder and prison escape; that Wilson solicited Trimmer's assistance in carrying out his plan to kill the witnesses, the two Assistant United States Attorneys and other persons in return for a substantial sum of money; that his proposal included Trimmer's providing an assassin, or a "hit man," to kill the intended victims for payments ranging in each instance from $50,000 to $500,000; that Trimmer, who at that time had been cooperating with federal and state authorities on other and unrelated matters, reported Wilson's proposal to the Federal Bureau of Investigation, who assigned one of its agents to act in an undercover capacity as the hit man under the name of Tony

DeAngelo ("DeAngelo"); that Trimmer introduced the agent, posing as the "hit man" and under his assumed name, to Wilson; that thereafter, apart from various alleged overt acts, Wilson at the MCC identified DeAngelo to his son, who subsequently paid $9800 cash to DeAngelo as a down payment for the first killing. Based on these general allegations and others, the indictment contains the following charges:

## CONSPIRACY COUNTS

Three separate conspiracy counts: Count 1, under 18 U.S.C., section 371, to violate the statute against kidnapping (18 U.S.C., section 1201(a)(1)); obstruction of justice (18 U.S.C., section 1503); tampering with witnesses (18 U.S.C., section 1512); and retaliation against witnesses (18 U.S.C., section 1513).

Count 2 charges as a separate offense a conspiracy to murder the Assistant United States Attorneys under the Protection of United States Officers Act (18 U.S.C. § 1117).

Count 3 charges a conspiracy to murder under the New York Penal Law, made applicable by the Assimilative Crimes Act (18 U.S.C. § 13 and New York Penal Law § 105.15).

## SUBSTANTIVE COUNTS

Count 4 charges the Wilsons with the assimilated New York crimes of attempted murder in violation of 18 U.S.C. §§ 2 and 13 and New York Penal Law §§ 125.25(1) and 110.00, and count 5 with criminal solicitation (18 U.S.C. §§ 2 and 13 and New York Penal Law § 100.10).

Count 6 charges the defendants with obstruction of justice with respect to the two prosecutors in violation of 18 U.S.C. §§ 1503 and 2.

Counts 7 through 10 charge the defendants with attempted witness tampering (18 U.S.C. §§ 1512(a)(2) and 2).

Counts 11 through 15 charge both defendants with attempted retaliation (18 U.S.C. §§ 1513 and 2).

Wilson is the sole defendant named in counts 16 and 17, which respectively charge attempted tampering of witness John Heath (18 U.S.C., section 1512(a)(2)) and attempted retaliation against the same witness (18 U.S.C., section 1513).

Wilson makes a series of motions directed to the indictment. The defendant Erik Wilson opted for a nonjury trial, to which the government consented. Under their stipulation his trial is to follow his father's.

## I

## MOTION TO DISMISS FOR LACK OF IN PERSONAM JURISDICTION

Wilson moves to dismiss the indictment upon a claim of lack of jurisdiction over him as a result of the government's alleged misconduct in securing his return to the United States against his wishes. Since 1979 Wilson had been out of the country, centering his activities principally in Libya, where he had taken up permanent residence, from which country he was not extraditable.[1] In April 1980, he was indicted by a grand jury in the District of Columbia and a warrant was issued for his arrest. Efforts by the government, through various sources and intermediaries including attorneys representing him here and abroad, to secure his return failed.

The substance of his claim of lack of jurisdiction is that after those aborted efforts, through alleged misrepresentations and fraudulent activities engaged in by the United States government representatives or their agents, he was induced to enter the Dominican Republic. When he deplaned there he was detained on a pretext by Dominican customs officials, allegedly with the connivance of a United States official, was told his papers were not in order, and that they were putting him aboard a plane bound for New York. Wilson resisted, stating to the Dominican officials that he did not want to go to New York, but they

---

1. The United States has no extradition treaty with Libya.

responded they were under orders to put him on a plane to the United States, whereupon he was taken into custody by United States marshals and placed aboard a plane bound for New York. Upon arrival at Kennedy International Airport, a United States marshal boarded the plane and placed him under arrest.

Based upon the foregoing allegations, Wilson claims he was forcibly brought back to the United States against his consent, without proper authorization and in violation of his constitutional rights. In support of this contention, he relies upon *United States v. Toscanino*,[2] where a defendant alleged that foreign government agents, acting with the knowledge and consent of agents of the United States, engaged in the most egregious conduct, kidnapped the defendant from his home in Uruguay in violation of international treaties with the United States, brutally beat him, at times in the presence of his seven-month pregnant wife, held him incommunicado for seventeen days, during which he was tortured and physically abused, subjected to the most shocking, repulsive and inhumane treatment and finally drugged and placed aboard a plane for the United States, where he was given into the custody of waiting United States government agents. In remanding for an evidentiary hearing, the

*Toscanino* court held that if the allegations of government misconduct were upheld, due process required that the court divest itself of jurisdiction over the person of the defendant since it was "acquired as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights."[3]

■ Assuming the verity of Wilson's allegations,[4] his attempt to bring himself within the *Toscanino* concept fails.[5] There is no claim that he was kidnapped, tortured, drugged, terrorized or otherwise subjected to " 'conduct that shocks the conscience.' "[6] In the absence of such circumstances, the general and longstanding rule established by the Supreme Court almost 100 years ago under *Ker v. Illinois*[7] and reaffirmed sixty-six years later in *Frisbie v. Collins*[8] controls—that criminal jurisdiction "is not impaired by the illegality of the method by which the court acquires" in personam jurisdiction.[9] It is significant, moreover, that the three District Courts before whom defendant made a similar motion have all rejected it.[10] Furthermore, whatever the means used to bring the defendant into the United States to face the prior charges, once here, he was required to live within the law. The fact that his presence in the United States with respect to previously

2. 500 F.2d 267 (2d Cir.1974).

3. *Id.* at 275.

4. Defendant has submitted no affidavit as to any aspect of the government's alleged conduct. The allegations are contained in his counsel's brief.

5. *Compare United States v. Romano,* 706 F.2d 370 at 372–373 (2d Cir.1983); *United States v. Reed,* 639 F.2d 896, 901 (2d Cir.1981); *United States ex rel. Lujan v. Gengler,* 510 F.2d 62, 65 (2d Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975).

6. *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) *quoted in United States v. Toscanino,* 500 F.2d 267, 273 (2d Cir.1974).

7. 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886).

8. 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952).

9. *United States v. Reed,* 639 F.2d 896, 901 (2d Cir.1981). *See United States v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980); *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975); *U.S. v. Romano,* 706 F.2d 370 at 372 (2d Cir.1983); *United States v. Lira,* 515 F.2d 68, 70–71 (2d Cir.), *cert. denied,* 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975). *Accord United States v. Marzano,* 537 F.2d 257, 271–72 (7th Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977); *United States v. Herrera,* 504 F.2d 859, 860 (5th Cir.1974) (per curiam); *United States v. Cotten,* 471 F.2d 744, 747–49 (9th Cir.), *cert. denied,* 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 396 (1973); *Hobson v. Crouse,* 332 F.2d 561, 561 (10th Cir.1964) (per curiam).

10. The Southern District of Texas, the District of the District of Columbia and the Eastern District of Virginia. In Texas, the court denied the motion after affording the defendant a full evidentiary hearing.

pending charges might ultimately be held to have been obtained in violation of his constitutional rights is not a license for lawlessness; he does not gain immunity from prosecution for other alleged conduct that violates the criminal laws of the United States or any of its States.[11] Thus the court concludes that it has jurisdiction over the defendant and the motion to dismiss on this ground is denied.

## II

## LACK OF PROPER VENUE AS TO THE SUBSTANTIVE COUNTS

The defendant next contends that venue is misplaced in this District on the substantive counts of attempted murder, criminal solicitation, obstruction of justice, tampering with and retaliation against witnesses. The attack centers about the relationship of the various alleged acts to the obstruction of justice charge. The thrust of this claim is that (1) the prosecutions against Wilson with respect to which the defendant committed the various acts aimed to obstruct justice were pending in the Districts of Texas, Virginia and the District of Columbia, and (2) the six witnesses and the Assistant United States Attorneys who were to be murdered were beyond this District—the latter two in the District of Columbia and

the others either in Florida, Virginia, Washington, D.C., Switzerland or Libya. The defendant, of course, relies upon both Article III, section 2, clause 3, of the Constitution and Rule 18 of the Federal Rules of Criminal Procedure, which require that the prosecution must be held in the state or district where the crime was committed. Thus the basic issue is the locus of the offense.[12]

The defendant argues, and not without support, that in prosecutions for obstruction of justice proper venue is in the district where proceedings have been, or intended to be, affected regardless of where the obstructive acts occurred—in effect that the gravamen of the offense is the impact or intended impact upon the obstruction of justice where an action or investigation is pending that controls, and not where the attempts occurred.

■ The Courts of Appeals that have considered this issue are not in accord. Thus the defendant's position finds support in rulings in the First,[13] the Fourth,[14] and the Sixth Circuits.[15] Our own and other Courts of Appeals have taken a contrary position, to wit, that venue is proper in the district where the obstructive or threatening acts occurred.[16] This Court, of course,

11. *Cf. United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (violation of court order, even where court's jurisdiction is subject to serious doubt, is subject to sanction); *United States v. Petrella,* 707 F.2d 64 (2d Cir.1983) (alleged invalidity of deportation order no defense to charge of illegal re-entry); *United States v. Pereira,* 574 F.2d 103, 106 n. 6 (2d Cir.1978), *cert. denied,* 439 U.S. 847, 99 S.Ct. 145, 58 L.Ed.2d 148 (1979) (illegality of arrest or detention is not a defense to charge of escape). *Accord United States v. Smith,* 534 F.2d 74, 75 (5th Cir.1976) (per curiam), *cert. denied,* 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977); *United States v. Haley,* 417 F.2d 625, 626 (4th Cir.1969) (per curiam); *Mullican v. United States,* 252 F.2d 398, 403–04 (5th Cir.1958); *Aderhold v. Soileau,* 67 F.2d 259, 260 (5th Cir.1933).

12. *Armour Packing Co. v. United States,* 209 U.S. 56, 76, 28 S.Ct. 428, 433, 52 L.Ed. 681 (1908). *See also Travis v. United States,* 364 U.S. 631, 634, 81 S.Ct. 358, 360, 5 L.Ed.2d 340 (1961); *United States v. Chestnut,* 399 F.Supp.

1292 (S.D.N.Y.1975), *aff'd,* 533 F.2d 40 (2d Cir.), *cert. denied,* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976).

13. *United States v. Tedesco,* 635 F.2d 902, 904–06 (1st Cir.1980), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981). *But see id.* at 906 n. 5.

14. *United States v. Kibler,* 667 F.2d 452, 454 (4th Cir.), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982). *But see id.* at 455 n. 2.

15. *United States v. O'Donnell,* 510 F.2d 1190, 1192–95 (6th Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975). *See also United States v. Barham,* 666 F.2d 521 (11th Cir.), *cert. denied,* 456 U.S. 947, 102 S.Ct. 2015, 72 L.Ed.2d 470 (1982). *But see id.* at 524 n. 2.

16. *United States v. Brothman,* 191 F.2d 70, 72 (2d Cir.1951); *United States v. Swann,* 441 F.2d 1053 (D.C.Cir.1971); *United States v. Na-*

is bound by the ruling of the Second Circuit.[17] Here the defendant is charged, while confined at the MCC, with having committed the various acts aimed at obstructing justice in the three separate districts. These included enlisting the aid of Trimmer for the hiring of an assassin to murder witnesses and prosecutors, identifying the hit man to his codefendant, directing the payment of the initial deposit, telephoning to various persons in furtherance of the assassination plot, and the like. If the government sustains the allegations of this indictment, these were "the performance of acts which constitute a 'substantial step' towards the commission of the substantive offense." [18]

■ Were the issue one of first impression, this Court would hold that venue is proper in the district where the acts were committed even though intended to obstruct justice in an official proceeding pending in another district. The essence of the crime is tampering with or retaliating against a witness with intent to obstruct justice wherever the proceeding is pending. The crime is the offender's attempt with intent to obstruct justice, and whether or not the effort succeeded is immaterial. And where an accused paid a sum of money in this District to induce a witness not to testify upon a trial in another district, justice was obstructed in that district; but the inducing act was performed in this District and the crime was committed here. Our Court of Appeals has observed that in determining proper venue the District Court must ascertain both the nature of the offense and the location of the acts constituting it, and the point at which the defend-

ant's acts have progressed so that a court "can confidently conclude that a crime has been committed." [19] While thus far no case has so held, this Court is of the view that the recently enacted Victim and Witness Protection Act, upon which various counts here under challenge are based, is broad enough to permit a prosecution either in the district where the acts occurred or in the district where its impact was intended, whether or not it succeeded.[20]

The factual allegations of the instant indictment strongly support that view. The charge is that defendant's acts were intended to obstruct justice by the murder of witnesses who were to testify and had already testified in three District Courts located in Texas, Virginia and the District of Columbia. Yet the acts to achieve those purposes were all committed by the defendant in this District. The other participants in those acts and conduct also were located here. Under the defendant's concept of proper venue, three separate prosecutions would be required with the prospect that a prosecution in one district would lead to a claim of double jeopardy in the other two. What was said in a case which held venue proper in the district where the basic acts occurred is pertinent here:

> Venue traditionally has been based on notions of fair, fast and efficient administration of trials. When venue is laid in the proper district—the one in which the crime was committed—witnesses are more readily available, and the operative facts and situs of the incident are closer at hand. The accused gets the trial by

dolny, 601 F.2d 940 (7th Cir.1979). *See also United States v. Bachert*, 449 F.Supp. 508 (E.D. Pa.1978).

**17.** It should be noted that the cases referred to consider 18 U.S.C. § 1503. The principal charges here are under a different statute, 18 U.S.C. §§ 1512 and 1513.

**18.** *United States v. Manley*, 632 F.2d 978, 987 (2d Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981) (citations omitted).

**19.** *United States v. Chestnut*, 533 F.2d 40, 47 (2d Cir.), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976) (*quoting United States v. Bithoney*, 472 F.2d 16, 23 (2d Cir.), *cert. denied*, 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397 (1973)).

**20.** 18 U.S.C. §§ 1512, 1513. *See also* S.Rep. No. 97–532, 14, 97th Cong., 2d Sess., *reported in* 1982 U.S.Code Cong.Ad.News 2515, 2520.

local jury envisioned by the framers of the Sixth Amendment.[21]

The motion to dismiss the referred-to counts for lack of proper venue is denied.

## III
## CHALLENGES TO THE SUFFICIENCY OF THE CHARGES

Wilson challenges the sufficiency of the charges against him on separate grounds. First, that because of his continuous confinement at the MCC and the role played by the government agents, he could not have committed the crimes of attempted murder (count 4) and tampering with and retaliation against witnesses (counts 7–15). Second, that certain state-law offenses he is charged with committing are made punishable by federal laws and are therefore not properly brought under the Assimilative Crimes Act. Third, that count 5—the solicitation charge—is merely a lesser included offense to the conspiracies charged and therefore does not constitute a separate offense. Finally, that the Victim and Witness Protection Act, violations of which are charged in counts 7 through 17, is unconstitutional. We consider each of these issues seriatim.

### A. Impossibility

Wilson contends that the objective of his alleged scheme could never have been accomplished because, even though unbeknownst to him when he committed the various acts attributed to him to carry out his plan, Trimmer, whose aid he enlisted, and DeAngelo were government agents, who reported to the government and obviously would not perform their assigned fictional roles as assassins of the witnesses and the Assistant United States Attorneys. Thus he argues that the crimes could not have occurred and were impossible of performance.[22] The defendant urges impossibility as a defense based on an observation by Judge Newman in *United States v. Myers*[23] that the "impossibility" defense has been the subject of "conflicting views" and that some federal courts "have upheld the defense when the crime charged had not in fact occurred, even though the defendants thought it had,"[24] citing *United States v. Oviedo*[25] and *United States v. Berrigan*.[26] On the strength of the foregoing citation by Judge Newman of *Oviedo* and *Berrigan,* the defendant here argues he is equally entitled to its benefit since if our Court of Appeals had disagreed with their holdings, it would have said so. This is a quantum leap to a desired conclusion. Judge Newman merely contrasted the conflicting views on the subject in different courts, citing *Oviedo* and *Berrigan* as the opposite side of the coin.

■ The law in this Circuit, as well as in New York State, is that the factual impossibility of the commission of a crime is not a defense. If the crime could have been committed had the circumstances been as the defendant believed them to be, it is no

---

**21.** *United States v. Nadolny,* 601 F.2d 940, 943 (7th Cir.1979).

**22.** The defendant, recognizing that the defense of impossibility of performance is barred by New York Penal Law § 110.10, excludes from his argument count four, which charges a violation of state law, but as to this count he contends that the crime charged does not meet the level of New York's standard for attempt, which requires an act that carries the "project forward within dangerous proximity to the criminal end to be attained." *People v. Bracey,* 41 N.Y.2d 296, 300, 392 N.Y.S.2d 412, 415, 360 N.E.2d 1094, 1097 (1977) (*quoting People v. Werblow,* 241 N.Y. 55, 61, 148 N.E. 786 (1915)).

**23.** 692 F.2d 823 (2d Cir.1982).

**24.** *Id.* at 850.

**25.** 525 F.2d 881 (5th Cir.1976) (sale of uncontrolled substance incorrectly believed to be a controlled substance).

**26.** 482 F.2d 171 (3d Cir.1973) (transmittal of letters to prison inmate incorrectly believed to be without knowledge). *But see United States v. Innella,* 690 F.2d 834, 835 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1526, 75 L.Ed.2d 949 (1983) (distinguishing *Oviedo; United States v. Everett,* 692 F.2d 596, 600 (9th Cir.1982) (rejecting *Berrigan* and observing that "most courts and commentators have not adopted [it]") (citing *United States v. Brooklier,* 459 F.Supp. 476, 480 (C.D.Cal.1978)); *United States v. Quijada,* 588 F.2d 1253, 1254–55 (9th Cir.1978).

defense that in reality the crime was impossible of commission.[27] Judge Bryan's thorough analysis of the contours of the impossibility defense in *United States v. Heng Awkak Roman*,[28] described by our Court of Appeals as an "admirable opinion,"[29] need not be reprinted here. Rather it is sufficient to note that there he stated the law that is applicable here: "factual impossibility" is not a defense be the charge the attempted commission of a substantive offense, or a conspiracy. Moreover, the factual basis for the defense of impossibility because "Wilson was incarcerated in a penal institution and thus was rendered incapable of hurting anyone"[30] is without substance. Wilson's various acts within the institution, such as proposing the plan, enlisting Trim-

mer to obtain the services of a hired killer, identifying the proposed killer to his codefendant, arranging for the initial payment, his various telephone calls, all in furtherance of the plan, were substantial steps to bring about the consummation of his stated objectives. The motion to dismiss counts 1 through 4 and 7 through 15 on the ground of the inherent impossibility of their completion is, therefore, denied.[31]

### B. Preemption

The defendant moves to dismiss counts 3 and 4 which charge violations of New York criminal laws that have been assimilated for purposes of federal jurisdiction. While in general one sovereign will not enforce

**27.** This is both the law of New York, applicable to counts three and four, *see* N.Y.Penal Law § 110.10 (McKinney 1975) (attempt); *People v. Dlugash,* 41 N.Y.2d 725, 734–35, 395 N.Y.S.2d 419, 426, 363 N.E.2d 1155, 1162 (1977) (attempted murder); N.Y.Penal Law § 105.30 (McKinney 1975) (conspiracy); *People v. Schwimmer,* 66 A.D.2d 91, 411 N.Y.S.2d 922 (2d Dep't 1978), *aff'd,* 47 N.Y.2d 1004, 420 N.Y.S.2d 218, 394 N.E.2d 288 (1979) (conspiracy), and the law of this Circuit. *See United States v. Giordano,* 693 F.2d 245, 249 (2d Cir. 1982) (conspiracy); *United States v. Marin,* 513 F.2d 974, 976 (2d Cir.1975) (attempted possession of cocaine); *Steiner v. Commissioner of Corrections,* 490 F.Supp. 204, 208 n. 12 (S.D.N.Y.1980) (attempt); *Fambo v. Smith,* 433 F.Supp. 590, 599 (W.D.N.Y.), *aff'd,* 565 F.2d 233 (2d Cir.1977) (attempted possession of explosives); *United States v. Heng Awkak Roman,* 356 F.Supp. 434, 436–38 (S.D.N.Y.), *aff'd,* 484 F.2d 1271 (2d Cir.1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974) (attempted possession of heroin and conspiracy to violate federal narcotics laws). *See also United States v. Rabinowich,* 238 U.S. 78, 85–86, 35 S.Ct. 682, 683–684, 59 L.Ed. 1211 (1915) (irrelevant that ends of conspiracy inherently unattainable). *Accord United States v. Rose,* 590 F.2d 232, 235–36 (7th Cir.1978), *cert. denied,* 422 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979); *United States v. Waldron,* 590 F.2d 33 (1st Cir.), *cert. denied,* 411 U.S. 934, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979); *United States v. Quijada,* 588 F.2d 1253, 1255 (9th Cir.1978).

**28.** 356 F.Supp. 434, 436–38 (S.D.N.Y.), *aff'd,* 484 F.2d 1271 (2d Cir.1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974).

**29.** *United States v. Marin,* 513 F.2d 974, 976 (2d Cir.1975) (adopting *Roman* analysis as controlling authority).

**30.** Defendant's Memorandum at 20.

**31.** Defendant's argument that, as a matter of law, he did not engage in conduct amounting to an "attempt" under either the federal or New York standards is yet another effort to re-package his "impossibility" defense. The crux of his position is that because of the role played by the government agents, Wilson's conduct neither amounted to a "substantial step" towards the commission of the substantive offense, *see United States v. Manley,* 632 F.2d 978, 987 (2d Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *United States v. Jackson,* 560 F.2d 112, 117–20 (2d Cir.), *cert. denied,* 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977); *United States v. Stallworth,* 543 F.2d 1038, 1040 (2d Cir.1976), nor "carr[ied] the project within dangerous proximity to the criminal end to be attained." *People v. Bracey,* 41 N.Y.2d 296, 300, 392 N.Y. S.2d 412, 415, 360 N.E.2d 1094, 1097 (1977) (quoting *People v. Werblow,* 241 N.Y. 55, 61, 148 N.E. 786 (1915)). In sum, he argues that

here there was no proximity to the accomplishment of the crime nor could there be. The alleged scheme never got off the mark. Neither was there a "substantial step." There was, in fact, no step at all: the Government's machinations rendered any "step" completely illusory.

Defendant's Memorandum at 20. Yet defendant's counsel admitted at argument that he would not have even raised this "defense" if, in conformity with Wilson's belief at the time, DeAngelo had in fact been a gun for hire. *See* Tr. of Oral Arg. at 51. *See also id.* at 45–51 *passim.*

the criminal laws of another,[32] Congress has directed that certain state offenses be absorbed, and made federally prosecutable crimes, under the circumstances set forth in the Assimilative Crimes Act (the "Act").[33] It provides:

> Whoever within [the special territorial jurisdiction of the United States] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, by the laws thereof . . . shall be guilty of a like offense and subject to a like punishment.

There is agreement between the parties that the central issue as regards this motion is whether, aside from the Act itself, Congress has made the state-law offenses specified in counts 3 and 4 punishable in the federal courts. If Congress has proscribed such conduct as penal offenses, the Assimilative Crimes Act is inoperable and New York state law cannot be applied.

■ The Assimilative Crimes Act "use[s] local statutes to fill in gaps in the Federal Criminal Code where no action of Congress has been taken to define the missing offenses."[34] In determining whether there is a gap to be filled, the court must examine whether "(1) the precise acts upon which the conviction depends have been made penal by the laws of Congress . . . and (2) the [state] offense . . . has been defined and prohibited by the Federal Criminal Code."[35] The latter prong of this test is concerned with avoiding enlargement, through the use of state law, of "the scope of an existing and precisely defined federal penal statute."[36] However, our Court of Appeals has held that where "the state statute provides a theory essentially different from that provided in the federal statute, the government can proceed on either statute."[37]

Defendant's essential point with respect to his preemption claim, however variously stated,[38] is that counts 3 and 4 charge the same offense as charged in other federal counts of the indictment—that the facts upon which the two counts are grounded are identical to the facts of the federal counts and therefore state law may not be applied—in sum, he concludes that Congress has made such conduct unlawful and thus preempted the very state law acts charged in those counts. We consider the attack upon each count separately.

### (i) COUNT 3

Under this count the defendants are charged with conspiracy to murder in viola-

---

**32.** *The Antelope,* 23 U.S. (10 Wheat.) 66, 123, 6 L.Ed. 268 (1825) ("The courts of no country execute the penal laws of another."). *See Huntington v. Attrill,* 146 U.S. 657, 666, 13 S.Ct. 224, 227, 36 L.Ed. 1123 (1892); *Wisconsin v. Pelican Ins. Co.,* 127 U.S. 265, 290, 8 S.Ct. 1370, 1374, 32 L.Ed. 239 (1888); *Loucks v. Standard Oil Co. of New York,* 224 N.Y. 99, 102, 120 N.E. 198, 198 (1918) (Cardozo, J.); *United States v. Romano,* 706 F.2d 370 at 376 (2d Cir.1983). *But cf. Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947).

**33.** 18 U.S.C. § 13.

**34.** *Williams v. United States,* 327 U.S. 711, 719, 66 S.Ct. 778, 782, 90 L.Ed. 962 (1946). *See also United States v. Sharpnack,* 355 U.S. 286, 289, 78 S.Ct. 291, 293, 2 L.Ed.2d 282 (1958); *Franklin v. United States,* 216 U.S. 559, 568, 30 S.Ct. 434, 436, 54 L.Ed. 615 (1910); *United States v. Press Pub. Co.,* 219 U.S. 1, 9–13, 31 S.Ct. 212, 213–215, 55 L.Ed. 65 (1910); *United States v. Vaughan,* 682 F.2d 290, 293 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 261, 74 L.Ed.2d 203 (1982).

**35.** *Williams v. United States,* 327 U.S. 711, 717, 66 S.Ct. 778, 781, 90 L.Ed. 962 (1946) (footnote omitted).

**36.** *United States v. Jones,* 244 F.Supp. 181, 183 (S.D.N.Y.), *aff'd,* 365 F.2d 675 (2d Cir.1965).

**37.** *Fields v. United States,* 438 F.2d 205, 207 (2d Cir.1971). *Accord United States v. Vaughan,* 682 F.2d 290, 293 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 261, 74 L.Ed.2d 203 (1982); *United States v. Eades,* 633 F.2d 1075, 1077 (4th Cir.1980) (en banc), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Brown,* 608 F.2d 551, 554 (5th Cir.1979).

**38.** As part of this argument, Wilson suggests at one point that the tampering and retaliation charges in counts 7 through 17 preempt the assimilation of the state-law conspiracy to murder charge in count 3. We see no reason to elaborate on this point because, on their face, the statutes address wholly different concerns.

tion of New York Penal Law, section 105.-15, that has been assimilated pursuant to 18 U.S.C., section 13. The intended victims and the object of the conspiracy are alleged to be both witnesses and the Assistant United States Attorneys. The defendant points to 18 U.S.C., section 1111, which makes it unlawful to murder persons within the territorial jurisdiction of the United States; to 18 U.S.C., section 1114, which makes it unlawful to murder public officials, including Assistant United States Attorneys; and to 18 U.S.C., section 1117, which specifically makes it a crime to conspire to violate sections 1111 and 1114. Thus he contends there is no basis for the application of the Assimilative Crimes Act.

 As to the inclusion of the Assistant United States Attorneys under count 3, the defendant is correct. In sharp contrast to section 1111 proscribing the murder of witnesses "within the territorial jurisdiction of the United States," discussed in greater detail hereafter, section 1114 makes it unlawful to kill public officials without territorial restriction. The government has consented to the exclusion of the Assistant United States Attorneys under count 3.[39] Thus the issue remains as to the witnesses, the other intended victims of the conspiracy to murder and whether this offense is covered by section 1111, which makes it a crime to murder a person within the "territorial jurisdiction of the United States."[40] This jurisdictional requirement is satisfied only when the fatal injury is inflicted within a federal jurisdictional enclave,[41] which includes, inter alia, any "fort, magazine, dockyard, or other needful building."[42]

 It is undisputed that the victims here had no connection to or presence in a federal territorial jurisdiction. Rather, they were dispersed throughout the country and beyond. Thus, there is no basis for charging a federal crime of murder of witnesses had these defendants succeeded with their plot; accordingly, the defendant cannot be charged with conspiracy to do so here,[43] in consequence of which the assimilated state law may be applied. The motion as to count 3 is denied except, as acknowledged by the government, the conspiracy to murder is limited to persons other than the two Assistant United States Attorneys.

### (ii) COUNT 4

 This count charges the defendant with attempted murder under New York Penal Law, section 125.25(1), which has been assimilated under the Act. The intended victims are the same six witnesses and two prosecutors. Here the defendant contends that this crime is preempted by 18 U.S.C., section 1113, which makes a federal crime any attempt to commit murder "within the ... territorial jurisdiction of the United States." The critical question here is whether there must be a nexus between the federal enclave and the *victim* or the criminal *conduct*. The former view,

---

**39.** The government expressly withdrew the Assistant United States Attorneys as intended victims under this count. Government's Memorandum at 41 n. *. *Cf. United States v. Bagaric,* 706 F.2d 42 at 61 (2d Cir.1983); *United States v. Von Barta,* 635 F.2d 999, 1002 (2d Cir.1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981); *United States v. Zovluck,* 274 F.Supp. 385, 392 (S.D.N.Y.1967).

**40.** 18 U.S.C. § 1111.

**41.** 18 U.S.C. § 3236. *See Johnson v. United States,* 225 U.S. 405, 32 S.Ct. 748, 56 L.Ed. 1142 (1912); *United States v. Parker,* 622 F.2d 298, 302 (8th Cir.), *cert. denied,* 449 U.S. 851, 101 S.Ct. 143, 66 L.Ed.2d 63 (1980); *United States v. Adams,* 581 F.2d 193, 200 (9th Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *Nixon v. United States,* 352 F.2d 601, 602 (5th Cir.1965) (per curiam); *Schoppel v. United States,* 270 F.2d 413, 418 (4th Cir. 1959). The same is true with section 1112, a companion provision, that proscribes manslaughter committed on a federal enclave. 18 U.S.C. § 3236; *United States v. Wiltberger,* 18 U.S. (5 Wheat.) 76, 94, 5 L.Ed. 37 (1820) (Marshall, C.J.); *United States v. Erdos,* 474 F.2d 157, 159–60 (4th Cir.), *cert. denied,* 414 U.S. 876, 94 S.Ct. 42, 38 L.Ed.2d 122 (1973).

**42.** *See* 18 U.S.C. § 7.

**43.** *Cf. United States v. Giordano,* 693 F.2d 245, 249 (2d Cir.1982) (jurisdiction established under section 371 "by proof that the accused planned to commit a substantive offense which, if attainable, would have violated a federal statute").

urged by the government, comports with the interpretation given sections 1111 and 1112 involving murder and manslaughter,[44] which immediately precede section 1113 in the Federal Criminal Code. In addition, reference to those sections as guides for the interpretation of section 1113 seems particularly appropriate because the latter section is expressly limited to attempts to commit murder and manslaughter, the very subject of sections 1111 and 1112. The case law is not dispositive. Yet, if it points in any direction, it supports the view that the nexus to federal property must be the presence of the victim, and not where the illicit conduct occurred.[45] The only basis for the opposite view comes from the statute, which, at best, equally supports both interpretations. As it stands, therefore, the balance tips in favor of the government's view. Accordingly, the Court holds that section 1113 applies only where the intended victim is physically present on federal property. Since such was not the case here, the assimilation of the state-law offense is proper.

### C. Wharton's Rule

■ Under count 5 the defendant is charged with the assimilated crime of solicitation of murder under New York law. This count charges that the defendant solicited, and attempted to cause, government informer Wayne Trimmer and FBI agent DeAngelo to murder eight individuals: the six witnesses and the two Assistant United States Attorneys. Section 100.20 of the New York Penal Law provides that "[a] person is not guilty of criminal solicitation when his solicitation constitutes conduct of

a kind that is *necessarily incidental* to the commission of the crime [charged]." [46] Defendant argues that because he is charged with a conspiracy to murder the witnesses and prosecutors, which necessarily involved the solicitation of co-conspirators, prosecution under this count is "absolutely barred." [47] Here the defendant invokes the well known Wharton's Rule, applicable to certain offenses such as bribery, adultery, bigamy and other offenses which necessarily require the participation of two persons and where the concert of action is merged in the commission of the substantive offense.[48] However, the Rule is inapplicable here. An act of solicitation may be performed by a single individual; it does not require the cooperation of another person. Here the defendant is only charged with soliciting Trimmer and DeAngelo and is not nor could be charged with *conspiring* with them because they are government agents.[49] Because other overt acts are alleged in the conspiracy count, Wilson's alleged solicitation of the government agents is not, as New York law requires, "necessarily incidental" to a conviction thereunder. Thus there is no bar to prosecution under both statutes, although one may question, in view of the number of counts, why it was necessary to add another.

### D. Constitutionality of the Victim and Witness Protection Act

■ Counts 7 through 17 charge violations of 18 U.S.C., sections 1512–13, which form part of the Victim and Witness Protection Act of 1982 ("Protection Act").[50] The defendant challenges the constitution-

---

**44.** *See* note 41 *supra.*

**45.** The few cases discussing this provision have generally done so while concomitantly referring to sections 1111 and 1112, or their predecessors. *See United States v. Clark,* 46 F. 633 (D.Alaska 1891). *See also Ex Parte Crow Dog,* 109 U.S. 556, 567, 3 S.Ct. 396, 403, 27 L.Ed. 1030 (1883) (victim must be on federal property) (dictum). *Cf. United States v. Anderson,* 503 F.2d 420 (6th Cir.1974) (per curiam). *See also id.* at 422 (McCree, J., dissenting).

**46.** New York Penal Law § 100.20 (McKinney 1975).

**47.** Defendant's Memorandum at 46.

**48.** *See, e.g., Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *United States v. Brommarito,* 524 F.2d 140, 143–44 (2d Cir.1975).

**49.** *See United States v. Barnes,* 604 F.2d 121, 161 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980).

**50.** Pub.L. No. 97–291, § 4(a), 96 Stat. 1249–50.

ality of the Protection Act both on its face as to all counts, and as applied in counts 16 and 17. The basis of his contention is that the Act is overbroad and infringes on the freedom of speech protected by the First Amendment to the United States Constitution. It does so, the defendant argues, because the sweep of the statute is without limit by its failure to require any genuine capability of carrying out the threat, any imminency of lawless action or any likelihood of producing such action.[51] The further argument is made that the Protection Act does not require that the threat be made "willfully" and thus would make punishable mere attempts to threaten.

Although the constitutionality of the provisions at issue here is a matter of first impression, courts have consistently upheld similar criminal statutes. For example, prior to its amendment, 18 U.S.C., section 1503, made it unlawful for any person to, "by threat[s] ... or by any threatening letter or communication, endeavor[ ] to influence, intimidate, or impede" any of a variety of classes of individuals, including witnesses before courts of the United States. The statute did not require proof of "wilfulness." Yet, despite its breadth, the statute has withstood numerous challenges to its constitutionality.[52] Moreover, convictions based solely on speech have been upheld.[53] Thus, given the settled constitutionality of former section 1503, the provisions at issue here are beyond challenge.

This conclusion is supported by other references. Thus, 18 U.S.C., section 871(a), which, *inter alia*, makes it unlawful to "knowingly and wilfully" make a threat to the life of the President of the United States, has also passed muster.[54] In interpreting this statute in *Watts v. United States,*[55] the Supreme Court held that "whatever the 'wilfulness' requirement implies, the statute initially requires the Government to prove a true 'threat,'" which by definition implies more than "political hyperbole." Defendant attempts to distinguish *Watts* on the ground that punishing threats to the life of the President arguably justified intrusion on the First Amendment, but threats to witnesses, victims and informants which may impede the administration of justice do not. It cannot be gainsaid, however, that the "unhindered and untrammeled functioning of our courts is part of the very foundation of our constitutional democracy."[56] But no less important, the very essence of our democratic society is the dignity and worth of every human being, whatever his political or economic status. It matters not whether the speech or conduct is directed against the President of the United States, any other public official or any citizen.

 Examination of the provisions of the Protection Act relevant here also leaves little doubt as to their constitutionality. A conviction under section 1512 requires proof that a person threatened another "with intent to" (1) withhold testimony or other matter from an official proceed-

**51.** Defendant's Memorandum at 79 (*citing Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam)).

**52.** *United States v. Fasolino,* 586 F.2d 939, 941 (2d Cir.1978) (per curiam) (obstruction of justice under former § 1503 is a crime "that can be committed merely by words"); *United States v. Marionneaux,* 514 F.2d 1244, 1249 (5th Cir.1975); *Anderson v. United States,* 215 F.2d 84, 90 (6th Cir.1954); *United States v. Mitchell,* 397 F.Supp. 166, 172 (D.D.C.1974), *aff'd,* 559 F.2d 31 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

**53.** *Osborn v. United States,* 385 U.S. 323, 331–32, 87 S.Ct. 429, 433–434, 17 L.Ed.2d 394

(1966); *United States v. Fasolino,* 586 F.2d 939 (2d Cir.1978) (per curiam); *United States v. Kelner,* 534 F.2d 1020 (2d Cir.), *cert. denied,* 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976).

**54.** *United States v. Carrier,* 672 F.2d 300, 303 (2d Cir.), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982).

**55.** 394 U.S. 705, 708, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969) (per curiam).

**56.** *Cox v. Louisiana,* 379 U.S. 559, 562, 85 S.Ct. 476, 479, 13 L.Ed.2d 487 (1965). *See also Wood v. Georgia,* 370 U.S. 375, 383, 82 S.Ct. 1364, 1369, 8 L.Ed.2d 569 (1961).

ing, or (2) cause them to evade legal process or absent themselves from an official proceeding. Similarly, for conviction under section 1513, there must be proof that a person engaged in conduct or made threats "with intent to retaliate against any person" having given testimony or other evidence in an official proceeding. Thus, facially, these provisions do not admit of making "innocent remarks" unlawful. The claim that the Protection Act is facially overbroad is without substance.

 Whether the statements made and the acts engaged in amount to "true threats" is a question of fact for the jury.[57] This observation also disposes of defendant's argument that the Protection Act is unconstitutional as applied in counts 16 and 17 where defendant is charged with making a threatening statement to John Heath.[58] As the Court noted at oral argument, it cannot say that as a matter of law the statement could not be construed as being sufficiently clear as "to convey a gravity of purpose and imminent prospect of execution."[59] Ultimately, of course, this too is a question for the jury. For all these reasons, therefore, the motion is denied.

## IV

## CHALLENGES TO THE SUFFICIENCY OF THE INDICTMENT

The defendant attacks the sufficiency of the indictment upon claims that certain counts are either multiplicious or duplicitous and some are improperly joined.

### A. Multiplicity

The defendant contends that:

(1) Each of the conspiracy counts (counts 1 through 3) is multiplicious with the other two;

(2) The witness tampering counts (counts 7 through 10) are multiplicious with their counterparts among the witness retaliation counts (counts 11 through 15); and

(3) The attempted murder count (count 4) is multiplicious with the obstruction count (count 6) and each of the tampering-retaliation counts.

 The multiplicity doctrine is based upon the Fifth Amendment's Double Jeopardy clause which "protects against multiple punishments for the same offense."[60] An indictment is multiplicious when a single offense is charged in more than one count.[61] The issue arises where the same act or conduct constitutes a violation of two or more distinct statutory provisions and implicates Congressional intent as to cumulative punishment. Under *Albernaz v. United States*,[62] a three-pronged test is applied to determine whether Congress intended to authorize multiple punishment for conduct that violates two or more separate statutes.[63] The starting point is the language of the statutory provisions; if each unambiguously authorizes punishment

---

**57.** *See, e.g., United States v. Carrier*, 672 F.2d 300, 304, 306 (2d Cir.), *cert. denied*, 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982).

**58.** As described in the government's Memorandum of Law, the defendant told Heath that if Heath came to the United States to speak with an assistant United States attorney, "he [Wilson] was dead and so was I [Heath]."

**59.** *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir.), *cert. denied*, 419 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976).

**60.** *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (*quoted in United States v. Barton*, 647 F.2d 224, 234–38 (2d Cir.), *cert. denied*, 454 U.S. 857,

102 S.Ct. 307, 70 L.Ed.2d 152 (1981)). *See Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

**61.** *United States v. Isrealski*, 597 F.2d 22, 24 (2d Cir.1979). *Accord, United States v. Chrane*, 529 F.2d 1236, 1237 n. 3 (2d Cir.1976); *United States v. Hairrell*, 521 F.2d 1264, 1266 (6th Cir.), *cert. denied*, 423 U.S. 1035, 96 S.Ct. 568, 46 L.Ed.2d 409 (1975).

**62.** 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

**63.** 450 U.S. at 336–44, 101 S.Ct. at 1140–1145. *See United States v. Marrale*, 695 F.2d 658, 662 (2d Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1434, 75 L.Ed.2d 793 (1983).

for a violation of its terms, ordinarily it is to be inferred that Congress intended to authorize punishment under each provision. Next, the Court must determine whether the offenses are sufficiently distinguishable from one another to permit a reasonable inference that Congress intended to authorize multiple punishments. This element is satisfied by the application of the *Blockburger* test that each statute requires proof of a fact that the other does not.[64] And, if this test is satisfied, the Court should presume that multiple punishments are authorized. Finally, this presumption must be tested against the legislative history of the relevant provision to ascertain if a contrary intention is disclosed. If the legislative history either reveals an intent to authorize cumulative punishments or is silent on the subject, the Court should conclude that Congress intended to authorize multiple punishments.

■ Tested against this analysis, the indictment is sufficient to withstand the defendant's attack that it is multiplicious. Although a separate overall conspiracy is alleged, the three separate counts here under consideration charge that the defendant's conduct was directed to violations of separate and independent statutes, to wit, under count 1, 18 U.S.C., sections 1201 (kidnapping), 1503 (obstruction of justice), 1512 (tampering with witnesses) and 1513 (retaliating against witnesses). Under this count, the foregoing object of the conspiracy is an offense under the general conspiracy law, 18 U.S.C., section 371. The second count is directed to a violation of the conspiracy statute especially designed to protect federal officials from murder (18 U.S.C., section 1117). The third count charges conspiracy to commit murder under New York law (Penal Law section 105.15) made applicable by the Assimilative Crimes Act. Each statute on its face not only charges separate and distinct crimes, but is unambiguous and authorizes a different punishment for violation of its terms. Thus, the first prong of the *Albernaz* test is satisfied.

■ The second element is also met: proof of intent to kill is not an element of count 1,[65] although it is for the two others; only count 2 requires proof that the intended victims were Assistant United States Attorneys, and that the acts were undertaken "on account of the performance of [their] duties."[66] Count 3 requires only that the government prove that the defendants conspired to commit murder in violation of New York Penal Law, section 125.25; it does not have to prove why the Wilsons sought to murder, only that they intended to murder one or more of the intended victims. Thus, each count requires at least one fact necessary for conviction that the others do not. Finally, there is nothing in the legislative history that serves to rebut the presumption that Congress authorized multiple punishment

**64.** *Albernaz v. United States,* 450 U.S. 333, 337, 101 U.S. 1137, 1141, 67 L.Ed.2d 275 (1981); *Whalen v. United States,* 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Marrale,* 695 F.2d 658, 662 (2d Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1434, 75 L.Ed.2d 793 (1983); *United States v. Reed,* 639 F.2d 896, 905 (2d Cir.1981). In contrast to the defendant, this Court sees *Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), as being consistent with, rather than a departure from, the *Blockburger* rule. *See id.* 103 S.Ct. at 678.

**65.** Count 1 requires proof, among other essential matters, that the defendant conspired with his son to either (1) kidnap a victim and transport him in interstate commerce; (2) endeavor to impede officers in the discharge of their duties or to obstruct justice; (3) engage in acts with intent to prevent witnesses from attending a court proceeding; and (4) engage in acts with intent to retaliate against an individual who has given testimony in a proceeding. To satisfy these requirements, the government must show more than an assassination plot; it must introduce evidence of pending or terminated official proceedings; proof that the intended victims had been or were to be witnesses in those proceedings; and other matters. These fact issues are not necessary to convictions under the other counts.

**66.** *See* 18 U.S.C. § 1114.

for the separate offenses. Accordingly, the conspiracy counts are not multiplicious.[67]

▮ The Court reaches the same conclusion as to the substantive tampering and retaliation counts.[68] Each is proscribed by a separate statute, and facts necessary to one are not to the other.[69] It hardly requires discussion to point out that intimidation of a witness about to testify before a grand jury or at a trial is different from retaliation after he has testified. Finally, there is again nothing in the legislative history to rebut the presumption that Congress intended to authorize multiple punishments.[70] The same is true of Wilson's final claim—that the attempted murder count is multiplicious with the tampering/retaliation counts. Again, there are separate statutory provisions, different elements of proof necessary, and no contrary legislative history. Indeed, the Court's conclusion as to defendant's preemption claim on this point seems to compel this result here. In sum, the multiplicity claims are rejected.

## B. Duplicity

▮ Defendant's "duplicity" argument is that the government has joined two or more separate and distinct offenses in a single count in violation of the mandate of Rule 8(a) of the Federal Rules of Criminal Procedure that there be "separate counts for each offense." In specific he claims that counts 6 through 17 are deficient in this respect. The common basis for Wilson's position is that in each of these counts the government charges the commission of more than one crime because several different proscriptions set forth in the statutory provision are alleged to have been violated. For example, count 6 relates to obstruction of justice under 18 U.S.C., section 1503, which makes it unlawful for a person, *inter alia,* to (1) endeavor to influence, intimidate or impede an officer of the Court in the discharge of his duties; (2) injure him on account of his official status; *or* (3) endeavor to influence the due administration of justice. Proof that a person engaged in any one of these acts will sustain a conviction under section 1503, assuming the other essential elements are met. Here, the indictment alleges that, by arranging to kill the Assistants, the defendant both endeavored to interfere with an officer of the Court and impede the administration of justice. Both of these allegations are in count 6. The defendant maintains that such a pleading is duplicitous because two separate offenses are contained in the single count since proof of either will support a conviction. This conclusion, however, is erroneous. It has long been settled that an indictment is proper where it tracks the language of the statute, as does this one, with separate, *independent kinds of prohibited conduct pled conjunctively.*[71] As Judge Medina has explained:

> An indictment may charge alternate ways of violating a statute in the conjunctive, and a conviction under such an indictment will be sustained if the evi-

---

**67.** *Cf. United States v. Barton,* 647 F.2d 224, 234–38 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981).

**68.** Counts 7 through 17.

**69.** Thus, the tampering counts require proof, *inter alia,* that the intended victim was to participate in a pending or future proceeding. *See* 18 U.S.C. § 1512. In contrast, under the retaliation counts, the government must establish that the victim had given testimony previously, and defendant's acts were intended to be in retaliation thereto.

**70.** *See generally* S.Rep. No. 97–532, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Ad.News 2515. *See also United States v. Zolli,* 51 F.R.D. 522, 529–30 (E.D.N.Y.1970) (no mul-

tiplicity where defendants charged in one count with intimidation of a witness in a pending proceeding and in a second count, arising out of the same act, with intimidating the same individual with respect to a pending investigation; "mere fact that a single act or transaction is involved cannot preclude the possibility that such conduct may be violative of two criminal statutes").

**71.** *See United States v. Murray,* 618 F.2d 892, 896–99 (2d Cir 1980); *United States v. Viserto,* 596 F.2d 531, 538–39 (2d Cir.1979), *cert. denied,* 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1980); *United States v. Droms,* 566 F.2d 361, 363 (2d Cir.1977); *United States v. Di Salvo,* 251 F.Supp. 740, 742 (S.D.N.Y.1966); *United States v. Ricciardi,* 40 F.R.D. 135, 136 (S.D.N.Y. 1965) (and cases cited therein).

dence justifies a finding that the statute was violated in any of the ways alleged.[72] Similarly, the Supreme Court, many years ago, acknowledged the propriety of such indictment pleading:

> The statute was directed against certain defined modes for accomplishing a general object, and declared that the doing of either one of several specified things, each having reference to that object, should be punished.... We perceive no sound reason why the doing of the prohibited thing, in each and all of the prohibited modes, may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute.[73]

Here, the counts allege the commission of a crime through several alternate, though conjunctively pled, means; the allegations do not include several offenses in the same count. Accordingly, the motion is denied.

C. Motions under Rules 8 and 14

■ These motions involve different considerations. Under Rule 8 the issue is whether joinder was proper—a question of law. Under Rule 14 the issue is whether in those instances where there is proper joinder under Rule 8, the defendant will be unduly prejudiced—a matter to be determined by the Court as a matter of discretion.[74]

■ Under Rule 8 the defendant contends that counts 16 and 17, in which he is named as the sole defendant and is charged with tampering and retaliating against John Heath, are so unrelated to the other counts which charge tampering and retaliation against other witnesses as to require severance. However, Rule 8(b)[75] permits joinder of several counts where they involve participation "in the same act or transac-

tion or in the same series of acts or transactions constituting an offense or offenses." Here, the counts involving Heath relate to the threats by the defendant in regard to evidence Heath gave or was to give involving the criminal proceedings Wilson faced in the other federal districts that have previously been alluded to and are of the same type of activity allegedly directed by him toward other witnesses. Thus, the charges clearly fall within the scope of Rule 8(b). The defendant further argues that with respect to the Heath counts, as well as others, he is entitled to relief under Rule 14, which we now consider.

The defendant moves for a separate trial on those counts which charge an attempt to murder witnesses, tampering with and retaliating against witnesses and conspiracy to obstruct justice, from those which charge attempts to murder federal prosecutors and conspiracy to do so. In addition, he seeks a third separate trial on the Heath counts. The motion is grounded on Rule 14 of the Federal Rules of Criminal Procedure, which authorizes the Court to order "an election or separate trials of counts [i]f it appears that a defendant ... is prejudiced by a joinder of offenses." The Court is urged to exercise its discretion on the ground that the evidence with respect to the alleged plan to assassinate two Assistant United States Attorneys, if tried with the witness charges, would so taint the jury that Wilson runs the risk of conviction on all charges; also, that the joinder of the Heath charges, which he asserts are unrelated to the charges against the other witnesses, adds to the likely prejudicial impact. The thrust of his argument is that joinder of the various offenses will have a prejudicial spillover effect which may lead a jury to convict on the basis of "a cumulation of guilt from all

---

**72.** *United States v. Astolas,* 487 F.2d 275, 280 (2d Cir.1973), *cert. denied,* 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974).

**73.** *Crain v. United States,* 162 U.S. 625, 636, 16 S.Ct. 952, 955, 40 L.Ed. 1097 (1896).

**74.** *United States v. Werner,* 620 F.2d 922, 927 (2d Cir.1980).

**75.** Rule 8(b), not 8(a), is relevant. *See United States v. Turbide,* 558 F.2d 1053, 1061 n. 7 (2d Cir.), *cert. denied,* 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977); *United States v. Papadakis,* 510 F.2d 287, 300 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975).

the offenses charged which, when considered separately, would not result in a conviction." [76]

In order to justify a severance of counts and separate trials under the Rule, the defendant has the heavy burden [77] of establishing he will be so severely prejudiced that in effect he would be denied a fair trial.[78] That burden is not met either by counsel's speculation as to how joinder will impact upon the jury or that the defendant may have a better chance of acquittal at separate trials.[79] An important consideration in passing upon such a motion is the judicial economy that is served by a joint trial of counts or multiple defendants. Here, all the acts charged relate to one all encompassing scheme allegedly originated and furthered by the defendant to assassinate eight persons on account of the roles they played or were to play in criminal proceedings involving him. Since the nature of the evidence to be offered to sustain the charge, whether as to witnesses, prosecutors or Heath, is substantially the same, it is difficult to accept the view that undue prejudice will result if all charges are submitted to one jury. Here Wilson will be the sole defendant on trial; the indictment has been severed as to his son. The evidence to be presented will relate solely to him, his own acts, his own conduct and his own statements. There can be no spillover effect of evidence offered as to other defendants.[80] Indeed, in a more compelling situation, that of joint defendants whose defenses may be antagonistic, our Court of Appeals has recognized that a "certain amount of prejudice to a defendant is regarded as acceptable, given the judicial economies that result from joinder." [81]

What defendant is really arguing is that evidence that may be admissible to sustain the charges will be prejudicial. There is no blinking the fact that the nature of the proof required to sustain any one of the charges against the defendant, whether related to the prosecutors or witnesses, is bound to be of a prejudicial nature. Despite the increase of homicides and crime in modern society, such lawlessness is still viewed with abhorrence by law-abiding elements of the community and it may be acknowledged that this is particularly so where such activities are for the purpose of obstructing justice. Thus, whether the evidence the government intends to offer upon the trial to sustain its charge that the defendant originated and sought to carry out a plot to murder prosecutors or witnesses in order to obstruct justice is introduced with respect to one count or another, while no doubt prejudicial since its purpose is to remove the presumption of innocence and tends to prove guilt, it "is not the kind of 'prejudice' against which the law of evidence can or should protect." [82] As Chief Judge Learned Hand tersely put it: "if [testimony] 'prejudiced' [the defendant], that was precisely its entirely laudable pur-

---

**76.** Defendant's Memorandum at 87.

**77.** *United States v. Werner,* 620 F.2d 922, 928 (2d Cir.1980); *United States v. Carpentier,* 689 F.2d 21, 27 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983); *United States v. Adams,* 434 F.2d 756, 758 n. 3 (2d Cir.1970). *Accord United States v. Kopel,* 552 F.2d 1265, 1272 (7th Cir.), *cert. denied,* 434 U.S. 970, 98 S.Ct. 520, 54 L.Ed.2d 459 (1977); *United States v. Johnson,* 478 F.2d 1129, 1131 (5th Cir.1973).

**78.** *United States v. Werner,* 620 F.2d 922, 928 (2d Cir.1980). *See United States v. Carson,* 702 F.2d 351 at 366 (2d Cir.1983); *United States v. Carpentier,* 689 F.2d 21, 27 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983); *United States v. Ochs,* 595 F.2d

1247, 1260 (2d Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979).

**79.** *United States v. Carson,* 702 F.2d 351 at 366 (2d Cir.1983).

**80.** With the possible exception as to an initial payment allegedly made by his son to DeAngelo at Wilson's direction.

**81.** *United States v. Carpentier,* 689 F.2d 21, 27 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983) *(citing United States v. Werner,* 620 F.2d 922, 929 (2d Cir. 1980)).

**82.** *United States v. Briggs,* 457 F.2d 908, 911 (2d Cir.), *cert. denied,* 409 U.S. 986, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972).

pose." [83] This observation was echoed only recently by the Supreme Court, which noted that "every act on the part of a rational prosecutor is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of guilt." [84]

The Court is satisfied that the defendant will receive the fundamentally fair trial which is his constitutional right whether the counts are separated as suggested by him, or are continued as now set forth in the indictment. The motions, therefore, are denied.

## V

## OTHER MOTIONS

A. Motion for Inspection of Grand Jury Minutes and for Issuance of Interrogatories

 The defendant moves for an inspection of the grand jury minutes pursuant to Rule 6(e)(3)(C)(ii) of the Federal Rules of Criminal Procedure, which is authorized "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." No such showing has been made. Indeed, this is implicitly conceded under aspects of the motion referred to as "Grand Jury Due Process" with respect to which counsel for the defendant states he has made a "special study of grand jury due

process" that includes cases collected throughout the United States "which involve constitutional defaults before Federal and State grand juries." [85] Whatever the situation in those uncited cases, no factual matter has been presented on this application to warrant intrusion into the secrecy of the grand jury process.[86] Counsel's unsupported view that abuses may have occurred in various federal and state court cases with respect to the grand jury system is insufficient in this case to overcome the presumption of regularity of the grand jury proceedings [87] and does not justify disturbing the traditional secrecy surrounding such proceedings.[88]

Speculation and surmise as to what occurred before the grand jury is not a substitute for fact. That no factual basis has been presented to warrant the extraordinary relief of disclosure of the grand jury proceedings is evident from counsel's candid acknowledgment that "a certain degree of discovery is necessary in order to fully verify and document these [federal and state] grievances ... [and] it is imperative that certain information be supplied to the defense, which is essential to mounting and successfully advancing this legal attack," [89] followed by a listing of twenty-five specific interrogatories which, if granted, in effect would permit a ransacking of the files of

**83.** *United States v. Compagna,* 146 F.2d 524, 530 (2d Cir.1944), *cert. denied,* 324 U.S. 867, 65 S.Ct. 912, 89 L.Ed. 1422 (1945).

**84.** *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). *See also United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir.1980) (material evidence that is introduced "tends to prove guilt, but is not necessarily prejudicial in any sense that matters to the rules of evidence") (*citing United States v. Briggs,* 457 F.2d 908, 911 (2d Cir.), *cert. denied,* 409 U.S. 986, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972)); *United States v. Cirillo,* 468 F.2d 1233, 1240 (2d Cir.1972) (evidence was prejudicial because it was damning and not because its introduction was error).

**85.** Defendant's Memorandum at 113.

**86.** *See United States v. Costello,* 119 F.Supp. 159 (S.D.N.Y.1954). *See also United States v. Kahaner,* 203 F.Supp. 78 (S.D.N.Y.1962); *Unit-*

*ed States v. Garsson,* 291 F. 646 (S.D.N.Y.1923) (L.Hand, J.).

**87.** *United States v. Gordon,* 493 F.Supp. 814, 816–17 (N.D.N.Y.1980), *aff'd,* 655 F.2d 478 (2d Cir.1981); *United States v. Olin Corp.,* 465 F.Supp. 1120, 1134–37 (W.D.N.Y.1979).

**88.** *United States v. Dixon,* 538 F.2d 812, 813–14 (9th Cir.), *cert. denied,* 429 U.S. 959, 97 S.Ct. 383, 50 L.Ed.2d 326 (1976). *See also Dennis v. United States,* 384 U.S. 855, 869, 86 S.Ct. 1840, 1848, 16 L.Ed.2d 973 (1966); *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 398–99, 79 S.Ct. 1237, 1240–1241, 3 L.Ed.2d 1323 (1959); *United States v. Procter & Gamble,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). *See generally Illinois v. Abbott & Assoc.,* —— U.S. ——, 103 S.Ct. 1356, 75 L.Ed.2d 281 (1983).

**89.** Defendant's Memorandum at 113.

the United States Attorney. The sweep of these interrogatories is so broad that it suggests what is sought is a general investigation of both the prosecution and the grand jurors and their functionings with respect to the instant indictment. This case may not be used to conduct studies on theories held by counsel as to the alleged shortcomings of the grand jury system. In sum, there has not been the slightest evidentiary showing to warrant the inquiry. The indictment, being valid on its face, requires a trial on the merits.

The motion for the issuance of interrogatories and inspection of grand jury minutes is denied.

### B. Suppression of Evidence

Wilson makes a series of motions to suppress evidence. First, he moves to suppress all statements made by him because neither Trimmer nor DeAngelo gave him *Miranda* warnings. He contends that because he was in custody on other charges wherein he was represented by counsel, they had an obligation to advise him of his constitutional rights before speaking with him. These volunteered statements to the undercover agents were entirely unrelated to the charges upon which Wilson was confined and represented by counsel. They concern the proposal by the defendant for the commission of the crimes, the subject of the instant indictment. Upon the facts here presented the claim of a right to the *Miranda* warnings is so untenable as to require its rejection without discussion.[90]

Second, he moves to suppress all evidence obtained through electronic surveillance. The only matter so obtained was with the consent of one of the participants to the conversation. Accordingly, there is no basis for its suppression.[91] Third, defendant moves to suppress all physical evidence seized from him. No factual support for this motion is proffered. Moreover, the government represents that the only physical evidence it has obtained was given to Trimmer by Wilson. The motions to suppress are denied.

### C. Request for a *James* Hearing

Under *United States v. James,*[92] the Fifth Circuit requires a pretrial hearing before hearsay statements of co-conspirators may be received as against one another. In our Circuit, however, the matter is admissible upon the trial court's determination, made at the close of the government's case, of the sufficiency of the evidence, independent of the hearsay testimony, that the alleged co-conspirator participated in the conspiracy.[93] The motion is denied.

### D. Request for Discovery and Inspection

Three days prior to the filing of the instant motions, the defendant made various discovery demands upon the government.[94] Prior thereto, the government afforded defendant complete access to its documentary files, transmitted various matters pursuant to Rule 16 of the Federal Rules of Criminal Procedure totalling in excess of 800 pages,

---

90. *See, e.g., United States v. Hinton,* 543 F.2d 1002, 1014–15 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976); *United States v. Edwards,* 366 F.2d 853, 873 (2d Cir.1966), *cert. denied,* 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782 (1967). *Cf. United States v. Guido,* 704 F.2d 675 (2d Cir.1983).

91. 18 U.S.C. § 2511(2)(c); *United States v. Caceres,* 440 U.S. 741, 749–51, 99 S.Ct. 1465, 1470–71, 59 L.Ed.2d 733 (1979); *United States v. White,* 401 U.S. 745, 749–53, 91 S.Ct. 1122, 1124–1125, 28 L.Ed.2d 453 (1971); *Lopez v. United States,* 373 U.S. 427, 439, 83 S.Ct. 1381, 1388, 10 L.Ed.2d 462 (1963).

92. 590 F.2d 575 (5th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

93. *See, e.g., United States v. Margiotta,* 688 F.2d 108, 136–37 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *United States v. Mastropieri,* 685 F.2d 776, 786–90 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 260, 74 L.Ed.2d 203 (1982); *United States v. Geaney,* 417 F.2d 1116, 1120 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970).

94. *See* Rule 3 of the Criminal Rules of the Southern District of New York (counsel for moving party must certify that "he has conferred with his adversary in an effort in good faith to resolve by agreement the issues raised by the motion").

and formally acknowledged its obligations under *Brady v. Maryland*[95] and 18 U.S.C., section 3500. We only briefly address those demands of the defendant that the government resists.

First, the government need not produce matter regarding the impeachment of witnesses before trial.[96] Second, absent "some particularized showing of need," the defendant is not entitled to lists of government witnesses or persons interviewed by it.[97] Third, statements of witnesses or potential witnesses also need not be disclosed before trial.[98] Such material is governed by 18 U.S.C., section 3500. Finally, defendant has failed to establish any basis for obtaining information regarding other informants, if any.[99] Thus, the defendant's discovery motions are all denied.

### E. Demand for a Bill of Particulars

Defendant demands particulars which would require the government to set forth minutiae of evidence required to support the government's charges upon the trial proper. Five demands seek particulars regarding the formation of the conspiracy, a request that has "almost uniformly been denied."[100] The defendant demands the "exact place, time and location where it is claimed Edwin Wilson conspired to violate the various laws charged in the indictment"; the "exact time, place and location where [Wilson] first combined and conspired as alleged in the conspiracy counts"; "the approximate date upon which ... Wilson is alleged to have become a member of the conspiracy"; that the government "[s]tate the earliest date any documentary proof in [it's] custody or control ... links ... Wilson to the conspiracy"; and the name of the "alleged conspirator [with whom] it is claimed ... Wilson entered into the claimed conspiracy." The extensive indictment, setting forth in detail the nature of the charges and the listing of overt acts with details as to persons, dates and places, fully satisfies the requirements set forth in *Wong Tai v. United States*.[101] In addition, as already noted, the government has furnished to the defendant information contained in more than 800 pages of documents.

Defendant also demands the exact time and place of each overt act alleged in the indictment; the names and addresses of all other persons who were "present during the meetings, gatherings or conferences described in overt acts"; and to specify "whether [the defendant] was present at any meetings, gatherings or conferences described in overt acts other than those in which he is named." These requests are also not properly the subject of a bill of particulars.[102] The information the defend-

95. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

96. 18 U.S.C. § 3500; *United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n. 1 (2d Cir.1974); *United States v. Mavrogiorgis*, 49 F.R.D. 214, 215 (S.D.N.Y.1969).

97. *United States v. Pastor*, 419 F.Supp. 1318, 1330 (S.D.N.Y.1975), aff'd, 557 F.2d 930 (2d Cir.1977).

98. *Palermo v. United States*, 360 U.S. 343, 351, 79 S.Ct. 1217, 1224, 3 L.Ed.2d 1287 (1959); *United States v. Sebastian*, 497 F.2d 1267, 1269 (2d Cir.1974); *United States v. Percevault*, 490 F.2d 126, 131 (2d Cir.1974); *United States v. Shakur*, 543 F.Supp. 1059, 1061 (S.D.N.Y.1982).

99. *See, e.g., Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957); *United States v. Miranda*, 526 F.2d 1319, 1329–30 (2d Cir.1975), cert. denied, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976);

*United States v. Alexander*, 495 F.2d 552, 553 (2d Cir.1974) (per curiam).

100. *United States v. Kahaner*, 203 F.Supp. 78, 84 (S.D.N.Y.1962) (footnote omitted). See also *United States v. Lieberman*, 15 F.R.D. 278, 281 (S.D.N.Y.1953).

101. 273 U.S. 77, 80–81, 47 S.Ct. 300, 301–302, 71 L.Ed. 545 (1927). See also *United States v. Cafaro*, 480 F.Supp. 511, 518 (S.D.N.Y.1979); *United States v. Iannelli*, 53 F.R.D. 482, 483 (S.D.N.Y.1971); *United States v. Politi*, 334 F.Supp. 1318, 1320 (S.D.N.Y.1971); *United States v. Wolfson*, 289 F.Supp. 903, 913–14 (S.D.N.Y.), aff'd, 405 F.2d 779 (2d Cir.1968), cert. denied, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969).

102. *United States v. Boneparth*, 52 F.R.D. 544, 545 (S.D.N.Y.1971); *United States v. Cummings*, 49 F.R.D. 160, 161 (S.D.N.Y.1969);

ant has already received is more than sufficient to enable him to "properly ... prepare for trial, ... meet the Government's case and ... avoid surprise upon the trial." [103]

■ Finally, the defendant requests "any documentation which would, in any way, tend to verify the meeting or activities described in the overt acts." This appears to be nothing more than a request for the government's trial strategy, including the precise manner it intends to introduce evidence, and its legal theory. Such is not obtainable through a bill of particulars.[104] To require the government to provide the additional information sought would do little more than unduly restrict the government's proof at trial.

In sum, in view of the information already provided the defendant, his further requests are denied. As this Court stated in *United States v. Kahaner*,[105] which involved a bill of particulars virtually identical to that demanded here:

> The existence of a conspiracy and a defendant's participation therein is usually established by circumstantial evidence based upon independent proof of each alleged co-conspirator's acts, conduct and statements and the totality of conduct of all the participants and the reasonable inferences to be drawn therefrom. To require the government to specify the exact date when and the place where a particular defendant knowingly attached himself to the claimed conspiracy, the name of the person with whom he conferred about joining the conspiracy, and the other items on this subject sought by

*United States v. Kahaner,* 203 F.Supp. 78, 84 (S.D.N.Y.1962).

the defendants would unduly restrict the Government's proof.

The motion is denied.

F. Motion to Strike Surplusage and Prejudicial Material from the Indictment

■ Finally, the defendant moves pursuant to Rule 7(b) of the Federal Rules of Criminal Procedure to strike surplus and prejudicial material from the preamble or introductory statement of count 1, which sets forth details of then pending indictments in other districts (now concluded) and in connection with which the charges here are predicated. While upon a trial of the instant indictment evidence as to the other indictments will necessarily be admissible,[106] particularly on the issues of intent and motive, some of the details stated in this indictment are unnecessary and may unduly prejudice the defendant if, at the very inception of the trial and before a word of testimony is heard, they are read to the jury. Thus, whether the defendant sought and conspired to export "20 tons of C–4 plastic explosives" is surplusage and unnecessary as far as this case is concerned. What is important is that Wilson was under indictment under a federal charge, and whether the purpose was to export 1 ton or 20 tons is not a matter of consequence. So, too, that the conspiracy charged in another district included the murder "of a member of the Libyan Revolutionary Council who had defected to Egypt" has, in view of the nature of the charges in this case, the potentiality of an overshadowing prejudice at the very start of this trial. The same applies to paragraph 2, which alleges Wilson was incarcerated at the MCC in lieu of $20 million dollars bail and after December 20, 1982 was serving a fifteen-year sentence.

**103.** *United States v. Kahaner,* 203 F.Supp. 78, 84 (S.D.N.Y.1962).

**104.** *United States v. Boneparth,* 52 F.R.D. 544, 545 (S.D.N.Y.1971); *United States v. Tucker,* 262 F.Supp. 305, 307 (S.D.N.Y.1966); *United States v. Kelley,* 254 F.Supp. 9, 16 (S.D.N.Y. 1966); *United States v. Brevard,* 27 F.R.D. 250,

251 (S.D.N.Y.1961); *United States v. Klein,* 124 F.Supp. 476, 479 (S.D.N.Y.1954); *United States v. Lieberman,* 15 F.R.D. 278, 281 (S.D.N.Y. 1953).

**105.** *United States v. Kahaner,* 203 F.Supp. 78, 84 (S.D.N.Y.1962).

**106.** *See United States v. Bradwell,* 388 F.2d 619, 620–21 (2d Cir.), *cert. denied,* 393 U.S. 867, 89 S.Ct. 152, 21 L.Ed.2d 135 (1968).

Neither the amount of the bail nor the period of sentence is of significant importance. What is significant is that the defendant was confined at the MCC in lieu of failure to post bail previously fixed and was serving a sentence under a judgment of conviction. The foregoing items are excluded wherever they appear.

All other motions made by the defendant have been considered and are denied.

This lengthy opinion is due in large measure to the number and variety of counts contained in the indictment. While this is a matter that rests in the discretion of the prosecution,[107] one may question whether it is in the public interest, when an act or series of acts may give rise to one or more violations of different statutes, to honeycomb the criminal laws and base a separate count on each separate violation. While technically justified, such fragmentation of charges serves to extend a trial, tends to distract the jury from basic central issues in the case by dispersion of factual aspects, results in extended jury charges which at times may take as much as three or more hours to deliver and places an unduly heavy burden upon the jury to concentrate on the proliferated issues. A streamlined indictment based upon the basic law violation would serve the public interest just as well. It is common knowledge that where a single act or series of acts give rise to legally separate and distinct crimes, in the event of conviction, even on all counts, the sentence usually imposed is no greater than if there were a conviction on a lesser number. Simplicity in indictment pleading is as desirable as it is in the instance of a complaint in a civil action.

So ordered.

---

107. *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*, 228 F.Supp. 483, 489–90 (S.D.N.Y.1964).