UNITED STATES of America, Appellee,

v.

Richard G. FREITAG, Appellant.

No. 84–5201.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1985.

Decided July 17, 1985.

Rehearing Denied Aug. 26, 1985.

John R. Wylde, Minneapolis, Minn., for appellant.

Richard E. Vosepka, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The defendant, Richard Freitag, appeals from a jury verdict which found him guilty of thirteen counts of mail fraud in violation of 18 U.S.C. § 1341 (1982).[1] We affirm.

## I. Facts

On appeal, the defendant argues that the trial court[2] erred in denying his motion for a judgment of acquittal at the close of the government's case and, again, at the close of the evidence. Upon review of the district court's decision, we examine the evidence in the light most favorable to the government, and give the government the benefit of all reasonable inferences which may be drawn logically from the evidence. *United States v. Netz*, 758 F.2d 1308, 1310 (8th Cir.1985) (quoting *United States v. Anziano*, 606 F.2d 242, 244 (8th Cir.1979)).

The defendant was the president of a real estate company and its real estate subsidiary. During the years in question, the defendant and his co-defendant conducted an elaborate and systematic check-kiting scheme which involved seven bank accounts, and a main bank and four of its branch offices. As a result of the scheme, the banks suffered a loss in excess of $700,000. The evidence established that, while the defendant also had conducted legitimate business activity during the operation of the scheme, the majority of transactions in each of the bank accounts involved were attributable to the kite. In addition, the checks used for the kite were written for much larger amounts than were those written to pay for legitimate transactions. The government did not present any evidence as to how the bank offices cleared checks with one another. Thus, we assume that the checks were not cleared via the mail. As regards the mail, the government established only that the defendant received new, personalized, blank checks and deposit slips from a printing company through the mail, and received monthly bank statements for each of the business accounts used in the kite through the mail. Apparently, all deposits were made in person.

## II. Discussion

To uphold this conviction, we must find that the government produced sufficient evidence to allow a jury to find, beyond a reasonable doubt: that the defendant had devised a scheme to defraud the banks which maintained his accounts; and that he sent, or caused to be sent, a letter or some other article through the mail in executing the scheme. 18 U.S.C. § 1341 (1982). *United States v. Kaminski*, 692 F.2d 505, 511 (8th Cir.1982) (quoting *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954)); *United States v. Cooper*, 596 F.2d 327, 329 (8th Cir.1979). In turn, the mailing element of the statute consists of two requirements: that the defendant "caused" the use of the mails; and that this use was for the purpose of executing the scheme. *United States v. Moss*, 591 F.2d 428, 436 (8th Cir.

---

**1.** 18 U.S.C. § 1341 (1982) provides, in pertinent part, as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud * * * for the purpose of executing such scheme or artifice * * * places in any post office or authorized depository for mail any matter or thing whatever to be sent or delivered by the Postal Service * * * or knowingly causes to be delivered by mail * * * any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**2.** The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

1979) (quoting *United States v. Maze*, 414 U.S. 395, 399–400, 94 S.Ct. 645, 648–649, 38 L.Ed.2d 603 (1974)); *United States v. Rabbitt*, 583 F.2d 1014, 1022 (8th Cir.1978) (quoting *United States v. Brown*, 540 F.2d 364, 375–76 (8th Cir.1976)), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). The mail fraud statute was written to apply to any scheme to defraud in which the mails are used. Accordingly, we read § 1341 expansively and liberally in order to give effect to that purpose. *United States v. Boyd*, 606 F.2d 792, 794 (8th Cir.1979); *United States v. Mirabile*, 503 F.2d 1065, 1066 (8th Cir.1974) (quoting *United States v. States*, 488 F.2d 761, 764 (8th Cir.1973), *cert. denied*, 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974)), *cert. denied*, 420 U.S. 973, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975).

The jury convicted the defendant of the charges contained in the indictment. Thus, it is clear the jury determined that the defendant had devised the check-kiting scheme to defraud the banks which maintained his company's accounts. The defendant does not appeal from this jury finding. Rather, he maintains that the government failed to prove that he used, or caused the use of the mails for the purpose of executing the check-kiting scheme and, as a result, that no federal crime has been committed.[3] For § 1341 does not purport to reach all frauds, but only those in which the mail service is used in carrying out the fraud, leaving all other cases to be dealt with by appropriate state law. *Kann v. United States*, 323 U.S. 88, 95, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944).

■ In order to meet the first requirement of the mailing element of § 1341, that the defendant caused the use of the mails, the government must prove that the defendant did an act with the knowledge that the use of mails would follow in the ordinary course of business or that the use of mails reasonably could have been foreseen even though not actually intended. *United States v. Massa*, 740 F.2d 629, 646 (8th

Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *United States v. Flemino*, 691 F.2d 1263, 1265 (8th Cir.1982) (quoting *United States v. Wrehe*, 628 F.2d 1079, 1084–85 (8th Cir.1980)); *Brown*, 540 F.2d at 376 (quoting *Pereira*, 347 U.S. at 8–9, 74 S.Ct. at 362–363). It is clear that the defendant's activity met this requirement. The defendant began this check-kiting scheme with the knowledge that new checks and monthly bank statements, both necessary to effect and perpetuate the scheme, would be mailed to his various offices in the ordinary course of business.

■ In order to meet the second requirement, that the "use" was for the purpose of "executing the scheme," the government did not need to establish that the mailings were an essential element in the scheme; the government needed to prove only that they were "sufficiently closely related" to the scheme to bring the defendant's conduct within the ambit of the statute. *United States v. Sedovic*, 679 F.2d 1233, 1237–38 (8th Cir.1982); *Brown*, 540 F.2d at 376 (quoting *Maze*, 414 U.S. at 399, 94 S.Ct. at 648). The crux of the defendant's argument is that the mailings of personalized checks and monthly bank statements were so incidental to the check-kiting scheme that they cannot satisfy this second requirement. We disagree.

It is not disputed that the personalized checks used in the scheme were delivered via the mail, and that checks were an essential element in the check-kiting scheme. Nor is it disputed that the cancelled checks were returned monthly along with complete statements of debits and credits, and that the statements were necessary to keep the scheme in operation. All these items were necessary to know and keep track of the accounting balances in each account. There is more than sufficient evidence in the record to support both findings. What the defendant seems to be asking us to do is to declare, as a matter of law, that the

---

**3.** It is unclear whether the defendant presents this issue as a question of law or one of fact.

We address both questions.

routine mailing of personalized checks and monthly bank statements can never be "for the purpose of executing the scheme," as is required by § 1341. This we refuse to do.

The defendant argues that these mailings could not have been in furtherance of the check-kiting scheme because they were routine and, in and of themselves, benign or non-criminal. It is no defense to a criminal charge to claim that the mailings are routine. If a mailing is used to carry out a fraudulent scheme, a mail fraud charge will lie even though the mailing also may be related to a legitimate business purpose. *United States v. Brown*, 583 F.2d 659, 667, 668 (3d Cir.1978) (limiting *United States v. Tarnopol*, 561 F.2d 466 (3d Cir.1977)), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979). Nor is it any defense to claim that there was nothing inherently criminal about the checks and the statements. The intent with which the checks were ordered and the use to which the checks and statements were put are what taint the mailings involved here.

Other courts which have considered the question of whether a mailing was for the purpose of carrying out a fraudulent scheme, particularly as regards such routine mailings as personalized checks and monthly bank statements, have treated it as a factual question. *See United States v. Pick*, 724 F.2d 297, 300, 301 (2d Cir.1983) (finding that monthly bank statements were crucial to the operation of a check-kiting scheme); *United States v. Bosby*, 675 F.2d 1174, 1183 (11th Cir.1982) (because the evidence established that obtaining personalized checks was essential to the defendants' fraudulent scheme, the court affirmed the convictions under § 1341); *United States v. Knight*, 607 F.2d 1172, 1175–76 (5th Cir.1980) (affirming convictions under § 1341 because an embezzlement scheme depended on monthly bank statements and returned cancelled checks); *United States v. Britzman*, 547 F.2d 380, 382–84 (7th Cir.1977) (reversing a conviction under § 1341 solely on the basis of monthly bank statements and notices of overdrafts mailed by the bank where the evidence did not support the conclusion

that the mailings were used to carry out the check-kiting scheme); *Ohrynowicz v. United States*, 542 F.2d 715, 718 (7th Cir.), *cert. denied*, 429 U.S. 1027, 97 S.Ct. 650, 50 L.Ed.2d 630 (1976) (upholding a district court's finding that an order for personalized checks helped facilitate the fraudulent scheme); *Strauss v. United States*, 516 F.2d 980, 982–84, 986 (7th Cir.1975) (finding that "advice letters" were not sufficiently related to the fraudulent scheme to sustain a conviction under § 1341). We decline to treat the question as one of law, and hold that the validity of convictions under § 1341 will depend on the facts of each case.

■ The defendant argues that unless there is a demonstrable connection between the mailing in question and the execution of the fraudulent scheme, § 1341 is inapplicable. We agree. In this case the evidence, when viewed in the light most favorable to the government, established a "demonstrable" connection between the personalized checks used in the kite and the monthly bank statements reflecting the continuous flow of the kite, all sent through the mail, and the check-kiting scheme. There also was sufficient evidence to support the jury's determination that the defendant had devised the scheme with the intent to defraud the banks. Thus, the requirements of § 1341 were satisfied.

Finally, the defendant argues that our holding today will mean that all arguably fraudulent activity conducted with checks will fall within the ambit of § 1341. We reiterate that in order to obtain a conviction under § 1341, the government must prove beyond a reasonable doubt that the defendant intentionally devised a fraudulent scheme and caused the use of the mails for the purpose of carrying out the scheme. We trust that these requirements will serve as a restraint on whatever tendency the government might have to prosecute anyone who ever bounced a check. On the other hand, where personalized checks are ordered, and monthly bank

statements relied on to carry out an elaborate and systematic check-kiting scheme, the mails are being misused for criminal purposes. This is precisely the wrong which § 1341 addresses, and federal prosecution for such activities is warranted. We have reviewed each of the defendant's contentions and have found them to be without merit. Accordingly, the conviction is affirmed.