**UNITED STATES of America,**

v.

**Samuel WEINBERG, Defendant.**

**No. 86 CR 226 (S-1).**

United States District Court,
E.D. New York.

March 20, 1987.

---

Andrew J. Maloney, U.S. Atty. for E.D. N.Y. (Jonny J. Frank, Asst. U.S. Atty., of counsel), for plaintiff.

Jerome Karp, Brooklyn, N.Y. (Robert Bennet Adler, of counsel), for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendant is named in a sixteen-count superseding indictment. Count One charges that defendant violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), by conducting the affairs of an enterprise—his real estate business—through a pattern of racketeering. Seven predicate acts of racketeering are alleged.

The first four predicate acts arise from defendant's ownership of a building at 123–25 82nd Avenue, Kew Gardens, Queens, New York. The First Act of Racketeering charges defendant with employing various forms of harassment and deception in a scheme to force and fraudulently induce elderly and low-rent tenants to vacate their apartments. The Second Act of Racketeering charges a fraudulent scheme to overcharge tenants by violating New York's rent control and stabilization laws and misrepresenting to tenants the requirements of those regulations. The Third Act of Racketeering charges defendant with defrauding the purchaser of the building by falsely stating that the rents had been legally set and by misrepresenting the condition of the building. As part of this scheme, defendant allegedly paid $10,000 to the building superintendent in exchange for the latter's providing misleading information to agents of the purchaser. The Fourth Act of Racketeering charges defendant with fraudulently recovering the $10,000 bribe by suing the superintendent in the New York City Civil Court, Kings County.

The next two predicate acts involve a building at 1422 Fulton Street, Brooklyn, New York. It is alleged that defendant fraudulently received money from insurance companies by hiring an individual to commit arson at the building. The Fifth Act of Racketeering charges that in August 1975, the building was damaged by a fire set at defendant's request. The Sixth Act of Racketeering charges that the February 1979 fire that destroyed the building was also set at defendant's instigation.

The Seventh Act of Racketeering involves a two-family home at 378 Hawthorne Street, Brooklyn, New York. It is alleged that defendant arranged to have the house vandalized and then filed a fraudulent insurance claim for the damage.

Counts Two through Six charge mail fraud, 18 U.S.C. § 1341, in connection with the sale of the 82nd Avenue building. The allegedly defrauded purchaser sent mortgage payments to defendant and his wife through the mails.

Counts Seven through Eleven charge mail fraud in connection with the Civil Court suit to recover the $10,000 paid to the superintendent of the 82nd Avenue building. The mails were used when the superintendent sent payments to defendant's attorney in satisfaction of the judgment.

Counts Twelve through Fifteen charge mail fraud in connection with the destruction by fire of the Fulton Street building. The mails were used to transmit payments, claims and photocopies of documents.

Count Sixteen charges mail fraud in connection with an allegedly false insurance claim for personal injuries. Defendant struck his head on a car door and subsequently filed a lawsuit seeking $500,000 in damages. It is alleged that during the course of the litigation, he falsely stated

that he had been totally incapacitated for four months. The indictment charges that "numerous items" were sent through the mails for the purpose of executing the fraudulent scheme.

Defendant has filed several motions. He seeks dismissal of all counts, disclosure of grand jury minutes, severance of Count Sixteen, a bill of particulars, and additional disclosure.

## I. *The RICO Count*

### A. *Enterprise*

Defendant contends that the RICO count must be dismissed because it fails to charge properly the existence and operation of an enterprise. He argues that Count One alleges only individual conduct and fails to make the required distinction between the individual defendant and the enterprise.

■ 18 U.S.C. § 1961(4) defines an "enterprise" to "include[] any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The enterprise must have an ongoing formal or informal organization, and its various associates must function as a continuing unit. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981).

■ The enterprise alleged in this case is "Samuel Weinberg's Real Estate Business, also Known as All Cash Realty, and also known as Queens Blvd. Realty." The indictment describes this entity's business as the owning, controlling, managing and holding of mortgages on real property. Defendant argues that the government has charged as an enterprise an individual activity that is devoid of corporate identity or distinct form.

He points out that the person who is alleged to have conducted the affairs of the enterprise through a pattern of racketeering, *see* 18 U.S.C. § 1962(c), cannot himself be the enterprise. *See United States v. DiCaro*, 772 F.2d 1314, 1319–20 (7th Cir.

1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986); *see also Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985) (corporate entity may not be simultaneously the "enterprise" and the "person"), *cert. denied,* —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). The instant indictment makes no such allegation. It charges defendant's real estate business—not defendant himself—as the enterprise. The entity is alleged to have employed several persons and included partners and corporations. Whether the government proves the existence of this enterprise is a question for the jury at trial.[1] The allegations in the indictment are sufficient at this stage. *See McCullough v. Suter*, 757 F.2d 142, 143–44 (7th Cir. 1985) (defendant proprietor of sole proprietorship may be liable as person conducting affairs of enterprise through pattern of racketeering if sole proprietorship is business with identity distinct and separate from that of defendant; result would be different "if the sole proprietorship were strictly a one-man show").

### B. *Pattern*

Defendant next challenges the sufficiency of the pleading of the pattern of racketeering activity in Count One. He contends, citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), that the predicate acts charged here are merely sporadic activities and lack the combination of continuity and relationship necessary to constitute a pattern. He points to the different factual contexts of the alleged racketeering acts and argues that their varying natures preclude their being regarded as part of a pattern.

■ As the Second Circuit recently pointed out in *United States v. Ianniello*, 808 F.2d 184, 190 (2d Cir.1986) (quoting *United States v. Weisman*, 624 F.2d 1118, 1122 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980)), however, "[t]he link between the acts is sup-

---

1. Defendant is invited to submit to the Court suggested language for a charge to the jury on the issue of the distinction between the individual and the enterprise.

plied by the fact that 'the predicate acts constituting a "pattern of racketeering activity" must all be done in the conduct of the affairs of the enterprise.'" In other words, the "continuity plus relationship" test does not require some independent connection or similarity among the predicate crimes apart from their status as activities related to the common purpose of the continuing enterprise. *See id.* at 191.

Defendant is of course free to argue to the jury that the alleged pattern of racketeering activity in fact consists of sporadic crimes lacking the required nexus. "No doubt the government must prove at trial that the racketeering acts were done in the conduct of the affairs of the enterprise. Count [One] so alleges, and no more is required." *United States v. Dellacroce,* 625 F.Supp. 1387, 1390 (E.D.N.Y.1986).

## II. *The Mail Fraud Counts*

### A. *Counts Two through Six*

■ Defendant apparently has two objection to Counts Two through Six, which charge mail fraud in connection with the July 1980 sale of the building on 82nd Avenue in Kew Gardens. The mails were allegedly used in furtherance of the scheme when the defrauded purchaser mailed mortgage payments to defendant in 1981, 1982 and 1983. Defendant first argues that the charges are time-barred. Second, he argues that the mailings alleged do not bring the activity within the purview of the mail fraud statute because they are insufficiently related to the fraudulent scheme.

### 1. *Time Bar*

18 U.S.C. § 3282 requires that an indictment be filed within five years after the commission of the offense. Defendant contends that the instant indictment, which was filed in 1986, is untimely because the alleged crime was complete upon the sale of the building in 1980. The object of the allegedly fraudulent scheme was not, however, simply the transfer of title to the building. Rather, as the indictment states, the goal was "to obtain money." Thus, as the Supreme Court has recently pointed out, a "jury could properly find [that] the scheme, at the earliest, was not completed until receipt of the last payment ..." *United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 733–34, 88 L.Ed.2d 814 (1986). Because the offense was not complete until the proceeds of the fraudulent sale were collected, *see Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954) (collection of proceeds is essential part of scheme), there is no time bar.

### 2. *"Incidental" Mailings*

Defendant next argues that Counts Two through Six must be dismissed because the mailings charged are not an integral part of the alleged fraudulent scheme. He describes them as routine, incidental mailings that should not support a federal mail fraud prosecution.

■ It is beyond dispute that 18 U.S.C. § 1341 requires that the mails be used for the purpose of executing the fraudulent scheme. *See Kann v. United States,* 323 U.S. 88, 94, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944). In other words, the completion or success of the scheme must depend upon the mailing. *See United States v. Tarnopol,* 561 F.2d 466, 472 (3d Cir. 1977). Use of the mails to collect the proceeds of the fraudulent scheme is sufficient to meet the "in furtherance" requirement. *United States v. Regent Office Supply Co.,* 421 F.2d 1174, 1178 (2d Cir.1970).

■ That is precisely what is alleged here. Payments mailed from the allegedly defrauded purchaser to the defendant are thus far from incidental; they constitute the object—indeed, the culmination—of the allegedly fraudulent scheme.[2] *See Per-*

---

**2.** It is well settled that the defendant need not personally use the mails to be held liable under 18 U.S.C. § 1341. The statute proscribes using the mails or causing the mails to be used in furtherance of a fraudulent scheme. "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954).

*eira, supra,* 347 U.S. at 8, 74 S.Ct. at 362–63.

The cases upon which defendant relies, *see, e.g., United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), are inapposite. There the mailings took place *after* the defendant had received the goods and services that were the object of the frauds.[3] Here, on the other hand, the mails were allegedly used *in order* for the defendant to obtain the money that was the goal of the scheme. Whether the mailings charged here were in fact for purposes of carrying out the fraud is again of course a question for the jury. *United States v. Freitag,* 768 F.2d 240, 244 (8th Cir.1985). If that is the case, it is no defense that the mailings were "routine." *Id.*[4]

### B. *Counts Seven through Eleven*

■■■ Defendant seeks dismissal of the mail fraud counts arising out of his suit to recover the $10,000 allegedly paid to the superintendent of the 82nd Avenue building in exchange for his misrepresenting to the buyers the condition of the building. The argument is that the instant charges constitute a relitigation of the civil action. The government responds, in essence, "So

what?" I share that sentiment. Defendant has failed to proffer any legal theory under which the criminal prosecution is barred by the prior civil suit. No jeopardy issues are presented, and no estoppel argument is possible because the government was not a party to the first litigation. Accordingly, rehash or not, Counts Seven through Eleven will not be dismissed.

### C. *Counts Twelve through Fifteen*

■■■ The mail fraud counts involving the August 1979 fire at the Fulton Street building are challenged as time barred. Again the theory is that the alleged fraud was complete by March 1981 when the lawsuit between defendant and the insurer was settled. For the reasons stated in Part II.A.1, *supra,* however, I find to be timely the mail fraud counts based on subsequent mailings undertaken to effectuate the settlement. In addition, the "relitigation" argument addressed to these counts is rejected for the reasons stated in Part II.B., *supra.*[5]

■■■ Defendant also raises the issue of preindictment delay with regard to these counts.[6] Even where a prosecution is com-

---

**3.** In *Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), for example, defendant used a stolen credit card to charge food and lodging at motels. The subsequent mailings of the charge slips from the motels to the bank that issued the credit card were not in furtherance of the fraud because the scheme was complete upon defendant's receipt of the food and lodging.

**4.** Defendant also disputes that the sale of the building was fraudulent, arguing that he did not know that certain representations were untrue. This is of course a matter for trial.

**5.** Defendant also objects to Counts Twelve and Thirteen on the ground that they really should be charged together as one count. Count Twelve is based on the insurer mailing to defendant's attorney a bank draft in settlement of the case, and Count Thirteen is based on the attorney mailing a net settlement check to defendant. Defendant contends that it is unfair to charge two crimes for what is essentially one payment. It is well settled, however, that each mailing in furtherance of a scheme to defraud is a separate mail fraud offense. *See United States v. Eskow,* 422 F.2d 1060, 1064 (2d Cir.), *cert. denied,* 398 U.S. 959, 90 S.Ct. 2174, 26 L.Ed.2d 544 (1970). Defendant is of course free to argue

to the jury that because the "bifurcated" mailings of the payment were unforeseeable, he cannot be said to have caused both of them within the meaning of the statute. See *supra* note 2.

**6.** The original indictment in this case charged one count of mail fraud in connection with the insurance claim for the February 1979 fire at 1422 Fulton Street. That indictment was superseded to add a second count based on another mailing allegedly in furtherance of the same scheme. Defendant then filed motions addressed to the two-count superseding indictment. The government subsequently obtained the sixteen-count second superseding indictment, to which the instant motions are addressed. Most of the matters raised in the first set of motions are included in the second set; the preindictment delay issue, however, is not. The government has assumed that defendant intends to press that argument as to the second superseding indictment's four mail fraud counts arising from the February 1979 Fulton Street fire. It has also assumed that the other matters from the first set of motions have been incorporated in the second set and need not be separately addressed. Defendant has not objected on either score, so I shall adopt the government's approach.

menced within the statute of limitations, a lengthy and prejudicial preindictment delay may violate the due process clause. *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). Dismissal of the indictment would be required if events at trial demonstrate the preindictment delay to have prejudiced the defense, and if the delay was caused by an improper purpose on the part of the government. *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977); *see Marion, supra*, 404 U.S. at 324, 92 S.Ct. at 465.

■■■■ Defendant here meets neither prong of the test. First, the Supreme Court has cautioned that the determination whether a defendant has actually been prejudiced ought to await events at trial. *See Lovasco, supra*, 431 U.S. at 789, 97 S.Ct. at 2048; *Marion, supra*, 404 U.S. at 326, 92 S.Ct. at 466; *see also United States v. Ferrara*, 458 F.2d 868, 875 (2d Cir.) (mere dimming of memory is insufficient showing of prejudice), *cert. denied*, 408 U.S. 931, 92 S.Ct. 2498, 33 L.Ed.2d 343 (1972). Second, dismissal is not required, even if the defendant is somewhat prejudiced, if the delay is the product of legitimate investigation by the government. *Lovasco, supra*, 431 U.S. at 796, 97 S.Ct. at 2051–52. The government here states that it indicated defendant when it did not to gain a tactical advantage, but rather because it wished to investigate thoroughly and avoid premature accusations. "[C]areful investigation, even at the price of delay, is to be cherished, inasmuch as '[t]ime-consuming investigation prior to an arrest minimized the likelihood of accusing innocent parties and may facilitate the exposure of additional guilty persons.'" *United States v. DeMasi*, 445 F.2d 251, 255 (2d Cir.) (quoting *United States v. Feinberg*, 383 F.2d 60, 64–65 (2d Cir.1967), *cert. denied*, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968)),

*cert. denied*, 404 U.S. 882, 92 S.Ct. 211, 30 L.Ed.2d 164 (1971).

■■■■ The statute of limitations is the primary protection against stale prosecutions. *Marion, supra*, 404 U.S. at 322, 92 S.Ct. at 464 (citing *United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966)). Accordingly, where, as here, the defendant fails to demonstrate prejudice and improper purpose,[7] the motion to dismiss for preindictment delay must be denied.

### D. *Count Sixteen*

Defendant raises a timeliness objection to this count as well, apparently assuming that it is based on the 1979 mailing of allegedly false bill of particulars. The government has charged a scheme lasting through 1982, however, and alleges that defendant received proceeds through March of that year. Accordingly, the prosecution was timely commenced. See Part II.A.1., *supra*.

### III. *Grand Jury Matters*

■■■■ Defendant raises two concerns with regard to the grand jury proceedings in this case. First, he questions whether the grand jurors were informed of the dispositions of the lawsuits that arose out of the sale of the 82nd Avenue building, the damage claim for the Fulton Street Fire, and the $10,000 payment to the superintendent. Second, he questions whether the government informed the grand jury that it was receiving hearsay evidence. He has proffered no facts, however, which might justify further inquiry into the grand jury proceedings.

"An indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). "Counsel's

---

**7.** Defendant suggests that his indictment is the result of a change in leadership in the United States Attorney's Office. Aside from the fact that this theory is entirely speculative, defendant nowhere suggests why such an exercise of prosecutorial judgment might be improper. He also intimates that his current position as a Judge of the Kings County Civil Court makes him a particularly appetizing target for the prosecution. Again, however, he points to no respect in which this alleged state of affairs might infringe his rights.

unsupported view that abuse may have occurred ... with respect to the grand jury system is insufficient ... to overcome the presumption of regularity and does not justify disturbing the traditional secrecy surrounding such proceedings." *United States v. Wilson*, 565 F.Supp. 1416, 1436 (S.D.N.Y.1983). There has been no showing of "particularized need ... or ... some similar compelling necessity," *United States v. Abrams*, 539 F.Supp. 378, 388 (S.D.N.Y.1982), that would warrant disclosure of the grand jury minutes.

Defendant has done no more than identify two general areas in which it is possible the government went astray in conducting the grand jury proceedings. Although the Court is aware that a defendant cannot easily come up with the particularized factual basis necessary to disturb grand jury secrecy, *see United States v. Santoro*, 647 F.Supp. 153, 173 (E.D.N.Y.1986), "[s]peculation and surmise as to what occurred before the grand jury is not [sufficient] to warrant the extraordinary relief of disclosure of grand jury proceedings ..." *Wilson, supra*, 565 F.Supp. at 1436. Accordingly, the motions based on possible grand jury irregularities are denied.

## IV. *Severance*

■■■ It is next suggested that Count Sixteen—the only substantive count not also charged as a RICO predicate act—is improperly joined under Fed.R.Crim.P. 8(a) and should be severed. Rule 8(a) provides:

> Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or

transactions connected together or constituting parts of a common scheme or plan.

The mail fraud charged in Count Sixteen arises out of an allegedly false insurance claim for personal injuries sustained when defendant banged his head on the door of a car owned by the superintendent of the 82nd Avenue building. It manifestly does not arise out of the same acts or transactions as the other counts, and the government wisely does not argue otherwise. It does suggest, however, that this count can be tried with the others because it is part of a common scheme or plan, or at least is of a similar character.

Although, as the government states, Count Sixteen can be said to share a theme common to some of the other counts, in that it too allegedly involves a fraudulent claim submitted to an insurance company, I do not see how it can be regarded as part of a common scheme. The other frauds alleged in this case arose from defendant's real estate affairs, as is reflected in the RICO charge, whereas Count Sixteen involves personal injury. There is no factual overlap, nor is there any indication that the schemes were interdependent in any way. That they are, to a certain extent, of the same type, does not make them part of a common scheme or plan.[8]

Whether they are sufficiently of the same type such that they can be joined under Rule 8(a) as acts of a similar character depends on whether evidence of the joined offenses would be mutually admissible in separate trials. *See United States v. Halper*, 590 F.2d 422, 431 (2d Cir.1978). In other words, if the jury were to hear about the offense as evidence of "other crimes, wrongs, or acts" under Fed.R.Evid. 404(b) in any event, joint trial would not unfairly

---

**8.** The government relies on *United States v. Gordon*, 655 F.2d 478, 484–85 (2d Cir.1981), in arguing to the contrary. There the Court permitted the joinder of charges based on distinct fraud schemes. It cautioned that "'too precise an identity between the character of the offenses' charged in one indictment should not be required." *Id.* (quoting *United States v. Werner*, 620 F.2d 922, 926 (2d Cir.1980)). In that case the Court found the schemes to be part of a common and continuous plan because each involved misuse of defendant's position as a financial advisor. *Id.* Here the first fifteen counts can be said to be part of a common scheme because they each involve defendant's real estate holdings. Count Sixteen, however, charges a garden variety personal injury insurance fraud that could be attempted by anyone, landlord or not. Accordingly, *Gordon* does not support a finding of proper joinder.

prejudice the defendant. *See id.* The government first suggests that the Court find the evidence of the fraud in Count Sixteen to be admissible under Rule 404(b) to complete the story of the crime. This I cannot do. Count Sixteen is distinct both factually and theoretically; the story reads quite nicely without it.[9] Even if it did not, its probative value would be outweighed by its prejudicial effect. Fed.R.Evid. 403.

A closer question is presented by the government's argument that evidence of the scheme in Count Sixteen would come in under Rule 404(b) as proof of intent. It is difficult to decide this question in a vacuum, and my thinking here does not necessarily foreshadow rulings I may make at trial. At this time, however, I do not regard the admissibility question as sufficiently certain to warrant joinder of essentially distinct offenses. I am aware that because mail fraud is a specific intent crime, other fraudulent claims are sometimes admitted to prove intent. *See, e.g., United States v. Draiman*, 784 F.2d 248, 254 (7th Cir.1986). In this case, however, it is not clear that other crimes proof will be necessary, nor is its probative value likely to outweigh its prejudicial effect. Accordingly, the motion to sever Count Sixteen is granted. *See generally Halper, supra*, 590 F.2d at 428–32.

## V. *Bill of Particulars*

Defendant seeks an order requiring the government to submit a bill of particulars providing details of crimes charged. *See* Fed.R.Crim.P. 7(f). A bill of particulars has three purposes: to 1) ensure that the defendant adequately understands the charges so that he can prepare his defense; 2) avoid unfair surprise at trial; and 3) enable the defendant to plead double jeopardy if subsequently prosecuted for the same offense. *United States v. Shoher*, 555 F.Supp. 346, 349 (S.D.N.Y.1983); *see*

*Wong Tai v. United States*, 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927). Where "facts supplemental to those contained in the indictment ... are necessary to apprise the defendant of the charges against him with sufficient precision," *United States v. Persico*, 621 F.Supp. 842, 868 (S.D.N.Y.1985), a bill of particulars is appropriate.

■ Among the factors considered in determining whether particulars are warranted are the complexity of the offense, the clarity of the indictment, and the discovery otherwise available to the defendants. *See Shoher, supra*, 555 F.Supp. at 349. This case is far from simple, but it can be broken down into comprehensible units of allegedly illegal activity. The indictment is quite detailed, and a vast amount of discovery materials has been provided.

■ "The ultimate test of the appropriateness of a bill of particulars is 'whether the information is necessary, not whether it is helpful to the defendant.'" *United States v. Ramirez*, 602 F.Supp. 783, 793 (S.D.N.Y.1985) (quoting *United States v. Leighton*, 265 F.Supp. 27, 35 (S.D.N.Y.), aff'd, 386 F.2d 822 (2d Cir.1967), *cert. denied*, 390 U.S. 1025, 88 S.Ct. 1412, 20 L.Ed.2d 282 (1968)). The procedure is not be used to force the government to disclose its evidence, *United States v. Gottlieb*, 493 F.2d 987, 984 (2d Cir.1974), or its legal theory, *United States v. Leonelli*, 428 F.Supp. 880, 882 (S.D.N.Y.1977). "Nor may the government be required to describe the precise manner in which the crime ... is alleged to have been committed." *United States v. Andrews*, 381 F.2d 377, 377–78 (2d Cir.1967), *cert. denied*, 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968). Because the charges here are already amply detailed, and because the material defendant wants is so broad and so detailed that its provision "would amount to a point by

---

**9.** The government argues that there are two respects in which Count Sixteen is related to the other crimes charged in the indictment. First, the key witness will be the same building superintendent who will testify on some of the other counts. Second, some of the other frauds were allegedly planned during the time defendant

was supposedly incapacitated due to injuries sustained in his collision with the car door. These factors are really no more than coincidences. The fact remains that Count Sixteen is a distinct episode that adds nothing to the story of the first fifteen counts.

point revelation of each morsel of the government's proof," *United States v. Goldman*, 439 F.Supp. 337, 352 (S.D.N.Y. 1977), the motion for a bill of particulars is denied.

SO ORDERED.