**UNITED STATES of America,**

v.

**Jorge MORANTE, Defendant.**

**No. 12–cr–505 (WFK).**

United States District Court, E.D. New York.

May 31, 2013.

Jorge D. Guttlein, George Guttlein & Associates, New York, NY, for Defendant.

M. Kristin Mace, U.S. Attorney's Office Eastern District Of New York, Eastern District Of New York, Brooklyn, NY, for United States of America.

## MEMORANDUM AND ORDER

WILLIAM F. KUNTZ, II, District Judge.

Defendant Jorge Morante ("Defendant" or "Morante") moved this Court on April 26, 2013 to (1) compel the Government to provide various pretrial discovery and (2) determine the admissibility of potential Government evidence. The Government opposes Defendant's motion, characterizing most of Defendant's requests as either premature or unnecessary. For the reasons discussed below, the Court denies without prejudice Defendant's motions (a) for a bill of particulars; (b) to compel the Government to produce *Brady*, *Giglio*, and § 3500 material; (c) to compel the Government to produce its prospective witness list and disclose the identity of confidential informants; (d) to determine the admissibility of the Government's possible 404(b)

evidence; and (e) to suppress evidence allegedly seized in violation of the Constitution.

## BACKGROUND

Magistrate Judge Levy authorized the arrest of Defendant on May 3, 2012, based on a sealed complaint and affidavit filed the same day. Dkt. Nos. 1, 3. Defendant was arrested—and then released on a $100,000 bond—on May 7, 2012; the Complaint was unsealed the same day. Dkt. Nos. 4, 7; Gov't Br. at 2. An indictment charging Defendant with one count of wire fraud was filed on August 6, 2012 and, on August 16, 2012, Defendant was arraigned on the indictment. Dkt. Nos. 10, 12.

The complaint and affidavit in support of Defendant's arrest warrant allege Defendant was engaged in a "mirroring" scheme against DirecTV ("DTV") between April 2005 and May 2012. Compl. at 1–2 & 2. DTV is "a provider of digital television services, which provides access to television programs through the use of a receiver connected to the customer's television." *Id.* at 3. DTV permits residential customers to request additional receivers for $6.00 per month/per receiver, which receivers "mirror" programing to additional televisions located within the residence associated with the account. *Id.* In a mirroring fraud, numerous receivers are activated on a single account, but the receivers are located in separate residences, enabling additional residences to obtain DTV services for $6.00 per month, rather than the price of separate subscriptions. *Id.*

The complaint alleges Defendant executed this scheme by using a telephone to call DTV and activate numerous DTV receivers under false pretenses, later selling the use of the activated receivers to others, in order to obtain money and property. *Id.* at 2. Specifically, the complaint alleges that two phone numbers belonging to Defendant were used in maintaining and inquiring about eighty-five (85) different DTV accounts, which accounts included a total of 692 DTV receivers. *Id.* at III 4, 5, 7. In its opposition brief. the Government specifies that each account had an average of eight (8) receivers, with two accounts having as many as. twelve (12) receivers each. Gov't Br. at 3.

According to the complaint, payments to DTV for the 85 DTV accounts were made from two J.P. Morgan Chase checking accounts ("Chase Checking Accounts"), which were both registered to "Concordia Enterprises Inc." at Defendant's home address. Compl. at 8. Account statements for the Chase Checking Accounts reveal that numerous check and cash deposits were made into the accounts each month. *Id.* at ¶ 9. Images of the checks and deposit slips show both were made out to either Concordia Enterprises or Defendant. *Id.* Telephone and text message records reveal that Defendant used the additional mirrored receivers to provide DTV services to non-DTV customers and charged those non-DTV customers more than the $6.00 per month/per receiver that he paid to DTV, Gov't Br. at 4.

The Government asserts it promptly produced Rule 16 discovery on August 22, 2012, shortly after Defendant was charged by indictment on August 6. *Id.* The production included almost 7,000 pages, including telephone records and bank records. *Id.* Defendant made no further requests for discovery until the request accompanying the instant motion, which request was not filed with the Court and to which the Government states it will respond. *Id.* at 4–5.

## DISCUSSION

### I. The Government's Obligations Under *Brady, Giglio,* and 18 U.S.C. § 3500

■ Defendant moves this Court to compel the Government to produce all ma-

terial required under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). It is well-established that the Government must produce "evidence favorable to an accused," pursuant to *Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. 1194. However, the parties disagree on the scope of material contemplated by this disclosure requirement. *See, e.g.*, Gov't Br. at 5, n. 4. While the posture of this motion relieves this Court of the need to resolve this dispute today (*see infra*), the Court notes that the Second Circuit has clearly limited "*Brady* material" to encompass only evidence which has "a reasonable probability" of changing the outcome of a criminal trial. *See United States v. Coppa*, 267 F.3d 132, 141–42 (2d Cir.2001). The Supreme Court has defined "reasonable probability" in this context as "a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The Second Circuit, in turn, has explicitly held, in light of this definition, that *Brady* does not compel disclosure of *all* exculpatory evidence. *See Coppa*, 267 F.3d at 141–142 ("the current *Brady* law ... imposes a disclosure obligation narrower in scope than the obligation to disclose *all* evidence favorable to the defendant.") (citation omitted).

█ Regardless of the scope of the Government's disclosure obligation, *Brady* material need not be disclosed in response to a demand by a defendant—a point Defendant concedes. *See Coppa*, 267 F.3d at 142, 144; Def.'s Br. at 2 ("*Brady* sets no timetable for the production of evidence favorable to the defense."). The prosecutor is entrusted with the initial determination of what to produce, and when. *See Coppa*, 267 F.3d at 142 ("The nature of the prosecutor's constitutional duty to disclose has shifted ... to [ ] a result-affecting test that obliges a prosecutor to make a predic-

tion as to whether a reasonable probability will exist that the outcome would have been different if disclosure had been made."); *see also United States v. Gustus*, No. 02 CR. 888, 2002 WL 31260019, at *2 (S.D.N.Y., Oct. 8, 2002) (Swain, J.) ("[I]t is the Government's responsibility to determine what evidence is material and when such evidence should be disclosed in time for its effective use."). Not only does the Government indicate that it "is not aware of any *Brady* material," but the Government has also indicated that it "will promptly produce any *Brady* material of which it becomes aware," Gov't Br. at 5. Moreover, "Defendant has not shown that general *Brady* disclosure so far in advance of the trial is necessary to ensure due process of law." *Gustus*, 2002 WL 31260019, at *2. The Government having made a "good faith representation to the Court and defense counsel that it recognizes and has complied with its *Brady* disclosure obligations," Defendant's motion to compel the Government to provide *Brady* material is denied without prejudice as premature. *United States v. Messina*, No. 11–CR–31, 2012 WL 463973, at *12 (E.D.N.Y. Feb. 13, 2012) (Matsumoto, J.).

█ Defendant also moves this Court to compel the Government to produce impeachment materials pursuant to *Giglio* and 18 U.S.C. § 3500. As with *Brady*, it is also well-established that the Government must produce "evidence affecting Ethel credibility" of witnesses whose testimony may be determinative of guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Relatedly, pursuant to § 3500, the Government must produce "any statement [of a Government witness] in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). As Defendant concedes, § 3500 explicitly pro-

vides that "no statement or report [of a Government witness] ... shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a); Def.'s Br. at 6 ("The Court does not have the power to ... order[ ] the government to provide Section 3500 material at an earlier point."). *Giglio* material also need not be disclosed in response to a demand by a defendant. *See Coppa*, 267 F.3d at 143–44; *see also Messina*, 2012 WL 463973, at *12 (citing, *inter cilia, United States v. Palermo*, No. 99 CR 1199, 2001 WL 185132, at *1 (S.D.N.Y. Feb. 26, 2001) (McKenna, J.)). Although the law does not require or encourage disclosure of either *Giglio* or § 3500 material before trial, the Government acknowledges that it must produce evidence affecting the credibility of its witnesses, and informs the Court and the Defendant that "it intends to provide ... both *Giglio* and § 3500 material in advance of trial." Gov't Br. at 6. Accordingly, Defendant's motion to compel the Government to produce *Giglio* and § 3500 material is denied without prejudice as premature.

## II. The Government's Witness List

■ Defendant moves this Court to require the Government to furnish defense counsel with a list of the Government's prospective witnesses against him. Def.'s Br. at 7–9. In support of this motion, Defendant refers to the value and importance of a defendant's ability to interview witnesses before trial. *Id.* at 7–8. While the Court does not dispute this importance, Defendant fails to cite any authority in support of his position that the Government must turn over its list of prospective witnesses well in advance of trial. Rather, the cases cited by Defendant are all either easily distinguishable or clearly inapposite. *See, e.g., United States v. Black*, 767 F.2d 1334, 1338 (9th Cir.1985) (affirming district

court's denial of request for corrective action, noting "[t]he defendant's right of access is not violated when a witness chooses voluntarily not to be interviewed"); *United States v. Pepe*, 747 F.2d 632, 654 (11th Cir.1984) (noting that "most cases in which the court has found a constitutional violation" for failure to permit a defendant access to prospective witnesses, involve "hidden witnesses or deliberate[ ] disobe[diance]"); *Freeman v. State of Georgia*, 599 F.2d 65, 69, 72 (5th Cir.1979) (reversing denial of habeas petition where petitioner proved "the state deliberately conceal[ed] an eyewitness to a crime"); *United States v. Moseley*, 450 F.2d 506, 510 (5th Cir.1971) (affirming denial of pretrial motion for a list of adverse witnesses); *United States v. Peter Kiewit Sons' Co.*, 655 F.Supp. 73, 77–78 (D.Colo. 1986) (ordering prosecution to make witnesses available for deposition only where the court concluded that the prosecution's conduct had substantially discouraged witnesses from communicating with the defense); *Montana v. Smith*, 206 Mont. 99, 670 P.2d 96, 101 (1983) (holding "a defendant adequately represented by counsel does not have the constitutional right to interview witnesses personally").

In addition to the absence of relevant or binding case law authority, Defendant concedes that Rule 16 of the Federal Rules of Criminal Procedure is silent as to whether a witness list must be produced prior to trial. Def.'s Br. at 8. Moreover, courts within the Second Circuit "have widely found that [a] defendant is not entitled to a witness list absent a particularized showing of need." *United States v. Feola*, 651 F.Supp. 1068, 1138 (S.D.N.Y.1987) (Brieant, J.) (collecting authorities), *aff'd*, 875 F.2d 857 (2d Cir.1989); *see also United States v. Reis*, 788 F.2d 54, 58 (1st Cir.1986) ("There is no requirement under F.R.Crim. P. 16 or otherwise in the law,

mandating the disclosure to the defense of the identity of the government's trial witnesses"). Defendant has not made such a showing here and the facts do not suggest that Defendant will be unfairly prejudiced by waiting until trial to be furnished with a witness list. *See. e.g., United States v. Goldman,* 439 F.Supp. 337, 350 (S.D.N.Y. 1977) (Duffy, J.). While the Court does not dispute Defendant is entitled access to the witnesses against him under the Sixth Amendment, this Court is mindful of the Government's assurance that it "intends to provide [a witness list] to Morante sufficiently in advance of trial to allow him to make full use of the information." Gov't Br., at 7. Accordingly, this Court denies without prejudice Defendant's motion for a pre-trial witness list as premature.

## III. The Admissibility of Evidence Submitted Under F.R.E. 404(b)

■ Defendant moves this Court to determine the admissibility of any evidence of Defendant's crimes, wrongs, or other similar acts, which the Government intends to offer pursuant to Rule 404(b) of the Federal Rules of Evidence. Def.'s Br. at 9–11. Under Rule 404(b). the Government must "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and ... do so before trial." F.R.E. 404(b)(2)(A)-(B). The Government acknowledges its notice requirement and informs the Court that "it will provide the defendant with notice in advance of trial." Gov't Br. at 7. Accordingly, and because the Government has not yet given notice of its intention to present evidence of Defendant's "crimes, wrongs, or other acts"—if any—Defendant's motion is denied as premature. *See, e.g., United States v. Buck-*

*ner,* 417 F.Supp.2d 240, 243 (S.D.N.Y.2005) (Swain, J.) (denying motion to preclude Rule 404(b) evidence as premature where trial date had not been set and where Government indicated that it would provide Rule 404(b) notice 30 days prior to trial); *United States v. Saade,* No. S1 11 Cr. 111, 2012 WL 2878087, at *8 (S.D.N.Y. July 11, 2012) (Buchwald, J.) (denying as premature defendant's motion to compel the Government to disclose 404(b) evidence where trial date had not been set and where the Government was "still determining what 404(b) evidence, if any, it will seek to introduce at trial"). In the event the Government gives notice of its intention to admit evidence pursuant to Rule 404(b), Defendant may then move this Court to order a pre-trial hearing to determine the admissibility of that evidence.

## IV. A Bill of Particulars

■ Defendant moves this court to require the Government to provide a bill of particulars, setting forth the specific allegations against him.[1] Defendant argues he is entitled to this relief because "the indictment set out in a brief paragraph that just generally outlines the conduct or 'scheme' that he is alleged to have committed." Def.'s Br., at 12.

■ The Government may not impair a defendant's ability to prepare adequately for trial by withholding details of a charged crime, *See United States v. Wozniak,* 126 F.3d 105, 109–11 (2d Cir.1997) (vacating conviction where indictment was drawn in general terms and defendant was unaware of which specific drug transactions would be introduced as evidence against him). The Second Circuit has interpreted this standard to ensure a defendant can "identify with sufficient particu-

---

**1.** The Court excuses Defendant's failure to notice this argument in his Notice of Motion. *See* Gov't Br. at 1, n. 1.

larity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky,* 820 F.2d 572, 574–75 (2d Cir.1987) (reversing conviction where indictment did not specify the dates of staged burglaries nor enumerate which of numerous documents were falsified). However, the Government need not provide "a detailed statement of all the parties" involved in an alleged conspiracy or scheme; the materials used to charge a defendant "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.1975). In other words, the Government merely may not withhold information such that "the relevance of key events [would be] shrouded in mystery at the commencement of and throughout the trial." *United States v, Kazarian,* No. 10 Cr. 895, 2012 WL 1810214, at *25 (S.D.N.Y. May 18, 2012) (Gardephe, J.). However, as discussed below, "[t]here is no such mystery concerning the charges here." *Id.*

As the Government correctly points out, this case was initiated with a complaint that details the specific bases for the Government's charge, as well as some of the specific sources of evidence that may be used to support the Government's case. *See* Gov't Br. at 8. In *Kazarian,* a Medicare fraud case, the district court concluded the defendant was not entitled to a bill of particulars because the Government had provided "a summary chart listing all the allegedly fraudulent clinics, their addresses, the amounts that were billed to Medicare from these clinics, and the amounts that Medicare paid," as well as "an enormous amount of discovery material, including wiretap and search warrant affidavits,"

2012 WL 1810214, at *25. Similarly here, the Government has provided Defendant with the complaint and warrant supporting Defendant's arrest, which detail phone and text message records, checking account records, and images from bank deposit slips. *See, e.g.,* Compl. at 4, 8, 9. The Government has specified the duration and scope of Defendant's scheme, involving 692 DTV receivers over the course of more than seven years. *See id.* at 1, 4–7. Moreover, the Government has provided over 7,000 pages of discovery to date. Gov't Br. at 4. This information satisfies the Government's burden because it clearly allows Defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *Bortnovsky,* 820 F.2d at 574.

In any event, Defendant has not stated how or why he needs additional particulars to prepare for trial, nor has he stated how denial of additional particulars will burden his preparations. The ultimate test of appropriateness of a bill of particulars is "one of necessity," which is to say, "whether the information is necessary, not whether it is helpful to the defendant." *United States v. Wilson,* 493 F.Supp.2d 364, 369–70 (E.D.N.Y.2006) (Garaufis, J.) (quoting *United States v. Weinberg,* 656 F.Supp. 1020, 1029 (E.D.N.Y. 1987) (McLaughlin, J.)). Put another way, "a bill of particulars is not a discovery device," and "should not be granted where the Government has made sufficient disclosures concerning its evidence and witnesses by means other than the indictment" *Id.* at 370 (citing *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.1999)), Here, Defendant merely asserts, in conclusory fashion, "it would be prejudicial to prepare a defense without information regarding [the alleged scheme's] organiza-

tion, framework and the like." Def.'s Br. at 12. Absent specification of the particulars needed and the reason for their need, Defendant's motion for a bill of particulars is denied without prejudice.

## V. Suppression of Evidence Obtained in Violation of the Fourth, Fifth, and Sixth Amendments to the Constitution

Defendant states in his Notice of Motion that he will move this Court for "[s]uppression of evidence obtained in violation of the Fourth, Fifth, and Sixth Amendments to the Constitution." Def.'s Notice of Mot. Defendant's Memorandum of Law "does not identify any evidence that he seeks to suppress or any basis for suppression." Gov't Br. at 1, n. 1. In the event the Government identifies evidence that the Defendant in good faith believes was obtained in violation of the Constitution, Defendant: may then move this Court for the appropriate pretrial relief. Until then, no action is warranted. Because Defendant has failed to both articulate and support this motion, the Court denies the motion without prejudice.

### CONCLUSION

For the reasons discussed above, Defendant's motions are DENIED. The Court denies without prejudice Defendant's motion for a bill of particulars. The Court denies without prejudice, as premature, Defendant's motions to compel the Government to produce *Brady, Giglio*, and § 3500 materials, to compel the Government to produce a witness list, to determine the admissibility of Rule 404(b) evidence, and to suppress evidence obtained in violation of the Fourth, Fifth, and Sixth Amendments to the Constitution.

*SO ORDERED.*